Petitioner: Robert QUINTANO,

v.

Respondent: The PEOPLE of
the State of Colorado.

No. 03SC567.

Supreme Court of Colorado,
En Banc.

Jan. 18, 2005.

Rehearing Denied Feb. 14, 2005.

David S. Kaplan, Colorado State Public Defender, Andrea R. Manning, Deputy State Public Defender, Denver, for Petitioner.

John W. Suthers, Acting Attorney General, Wendy J. Ritz, Assistant Attorney General, Criminal Justice Section, Appellate Division, Denver, for Respondent.

Justice COATS does not participate.

KOURLIS, Justice.

In this sexual assault on a child case, Robert E. Quintano, the defendant in the underlying action, sought review of the court of appeals decision in *People v. Quintano*, 81 P.3d 1093 (Colo.App.2003), upholding three convictions against him for sexual assault on a child. Specifically, this court granted certiorari on two issues: (1) whether the failure of the trial court to compel the People to elect specific instances of the defendant's conduct for each count charged in the information violated the defendant's due process rights; and (2) whether the defendant's convictions were multiplicitous in violation of the prohibition against double jeopardy.

Concerning Quintano's multiplicity contention, the court of appeals disagreed that his three convictions violated the double jeopardy clause. The court opined that the three convictions were not based upon a single criminal act, and instead constituted separate offenses.

The court of appeals held, also, that the trial court erred in failing to compel the People to elect specific acts for each count. That court, however, found the error harmless. It reasoned that the three convictions were based on five specific incidents and that the jury was instructed that they were required to agree upon the same incident or agree that all acts had been proven. Because the jury acquitted the defendant of two counts, the court concluded that the jury agreed upon particular separate incidents for each of the three counts on which they convicted.

We granted certiorari, and now affirm. The prosecution here charged the defendant with five identically worded counts of sexual assault on a child, occurring on the same day. On its face, the complaint and information was problematic. At no time did the prosecution file a bill of particulars or elect specific acts or series of acts as to each count. How-ever, the evidence ultimately supported a conclusion that the defendant could have committed five separate offenses, because they were separated in time, location and comprised separate volitional departures, and the jury instructions and verdict forms required the jury to agree upon specific acts for each count. Therefore, the convictions are not infirm, either on double jeopardy or due process grounds. We sustain defendant's three convictions for sexual assault on a child.

## I. FACTS AND PROCEDURAL HISTORY

### A. BACKGROUND

On October 1, 1998, Robert E. Quintano was arrested and charged in Arapahoe County with, among other things, five counts of sexual assault on a child, in violation of section 18–3–405(1), C.R.S. (2004). All five offenses occurred on the same day and against the same victim, M.H. The jury convicted Quintano of three of five counts.

Quintano was a long time friend of M.H.'s family. M.H. was fourteen-years-old at the time of the alleged sexual assaults; Quintano was thirty eight. On July 25, 1998, the evidence indicates that he appeared at M.H.'s aunt's house where M.H. was babysitting. While the two were wrestling playfully in the living room of the house, Quintano grabbed M.H.'s left breast at least ten times, telling her "this is your day to get picked on." Quintano persisted, even though she admonished him to stop several times. M.H. pushed Quintano away and tried to escape.

The encounter then moved outside the house after Quintano carried M.H. to the poolside. At the pool, he grabbed her crotch area several times. Quintano then placed his hand up M.H.'s shorts and touched her vaginal area several times. There was no digital penetration. She pushed him away, but he continued by grabbing at her leg, and then pushed her into the pool with his hand resting on her crotch area.

The matter reconvened inside the house. After Quintano pushed M.H. into the pool, she got out and entered the house where she proceeded to the bathroom to dry off. Quin-

tano followed her there and again grabbed her breasts four to five times. M.H. exited the bathroom to use the telephone. Quintano followed her back to the bathroom and grabbed her buttocks, for about two to three minutes, telling her "do you know what I want to do to you? I want to eat your pussy." She tried to leave the bathroom but the defendant kept pulling her back. Lastly, the encounter relocated to the living room where Quintano bit M.H.'s left breast. M.H. could not recall specifically how long the various encounters lasted.[1]

## B. TRIAL PROCEEDINGS

The People charged Quintano with five counts of sexual assault on a child, in identically worded terms.[2] Prior to trial, Quintano moved, through his attorney, for a bill of particulars specifying more clearly the charges alleged in the information. The People objected, stating that information furnished through discovery had sufficiently apprised Quintano of the nature, time and extent of the charges and number of witnesses.

On October 7, 1999, at the pretrial hearing on the motion for bill of particulars, counsel for Quintano reasserted his argument that the charging document was too general to defend against. In addition, counsel argued that the five counts constituted overcharging and were therefore prejudicial. Counsel emphasized that "there is one date of offense, and there's one incident." He therefore demanded that the People elect a single count. Counsel also requested that "[i]f the People are saying that Count No. 1 is grabbing of the crotch, if they could just tell me that." The People responded that defense counsel was asking for two things, an election and a bill of particulars. The prosecutor disclosed that the victim had alleged at least 15 to 20 different acts as to which he was not re-

quired to make an election until at the close of the People's case.

Although the trial court noted that the information contained identically worded counts, it found pretrial discovery, including numerous acts alleged in the affidavit, sufficient. The court therefore dismissed the defendant's request for a bill of particulars. It left the issue of election to be resolved at trial.

At the preliminary hearing, defense counsel renewed his request for an election of acts.· Counsel reiterated that the People had not shown probable cause for several distinct offenses but had instead charged, "each time he may have touched her inappropriately, even if it was within five seconds of each other." The prosecutor countered that she had filed five counts for five distinct incidents of sexual assault, and not for several acts of continuous touching. She explained her charging decision as follows: "I have charged" (1) one count for touching the victim's left breast in the living room, (2) one count for touching the victim's vaginal area at the pool, (3) one count for touching the victim's buttocks in the bathroom, (4) touching her breast in the bathroom, and (5) one count for biting the victim's breast in the living room. The court again denied the defendant's motion.

At trial, the jury heard testimony from nine witnesses including the victim, her mother and two officers. All testified to the events as described above with minor variations in the victim's testimony—that on one occasion the defendant had touched her breast four or five times rather than ten times.

Defense counsel did not renew his request for an election at the close of the People's case, but the issue arose again during the jury instruction conference when defense

---

1. Moreover, although testimony as to how many times Quintano touched M.H. each time varied at trial, the totality of the evidence indicates that he touched her more than four times during each episode.

2. The information listed the identically worded counts as follows:
   FIRST [THROUGH FIFTH] COUNT... on or about July 25, 1998, in the County of Arapa-

hoe, State of Colorado, ROBERT EDWARD QUINTANO did unlawfully, feloniously and knowingly subject another, namely, [M.H.], not his spouse, to sexual contact, and [M.H.] was less than fifteen (15) years old ROBERT EDWARD QUINTANO was at least four (4) years older than [M.H.]; in violation of Section 18–3–405(1), C.R.S.; SEXUAL ASSAULT ON A CHILD.

counsel challenged the lack of variance in the verdict forms. Except for the form for count five, which contained a reference to bodily injury, all five forms contained identically worded counts. Counsel argued that the forms were confusing, but did not ultimately object to their submission to the jury. The prosecutor conceded only that count five related to the breast-biting incident. The trial court noted that the jury would receive the standard unanimity instruction, which would require the jury to agree that the defendant committed the same act of sexual contact for each separate count, or that the defendant committed all of the acts of sexual contact. The jury also received an instruction on the elements of sexual assault on a child as contained in section 18–3–405(1); but the verdict forms did not otherwise distinguish any counts.

During closing argument, the prosecutor argued to the jury that "the defendant didn't just do one thing. He did many, many things. And as you go through the evidence, you may determine that we could have charged him twenty five times or some other." The trial court overruled defense counsel's strenuous objections to those statements by the prosecutor, stating that "this is a closing argument." The prosecutor explained that the jury need only consider whether there were facts sufficient to support five counts.

During deliberation, the jury sent out two questions. The jury first asked: "Do we have to be unanimous for each count[?] We are in agreement on counts 1, 3, and 6[.] We are split on the remaining counts 2, 4, 5, and 7." The court instructed the jury that "any verdict that you reach on any count must be unanimous." Later, the jury sent out the following question:

> We do not understand the difference between the two interrogatories on counts 1 thru 4. Please explain the difference between 'committed the same act of sexual contact' and 'committed all of the acts of sexual contact[.]' Please give an example. Also why is page 2 of count 5 different than page 2 of counts 1 thru 4[?] Please explain.

In response to this question, the court referred the jury to Instruction 19, the unanimity instruction.

Ultimately, the jury convicted Quintano of three counts of sexual assault on a child, counts 1, 2 and 3, and found him not guilty of two counts of sexual assault on a child, counts 4 and 5. The court sentenced the defendant to 16 years in prison on each count, to be served concurrently. He appealed from the judgment and sentence.

## II. ANALYSIS

### A. MULTIPLICITY

We hold that the defendant's convictions do not violate double jeopardy because the legislature allowed for a unit of prosecution that would comprise different sexual assaults within these facts, and the evidence supported five separate assaults.

■ The prosecution's authority to combine several counts in a single indictment is found in Crim. P. 8(a). More specifically, sexual assault offenses may be joined even if the evidence of each offense would be admissible in separate trials. *See People v. Williams*, 899 P.2d 306, 313 (Colo.App.1995). Such consolidation of offenses fosters efficiency and effective administration of criminal trials. *See* 1A Charles Alan Wright, *Federal Practice and Procedure* § 141, at 5 (Crim.3d ed. 1999 & Supp.2004); *see also Ruth v. County Court*, 198 Colo. 6, 8, 595 P.2d 237, 239 (1979).

The indictment becomes subject to challenge, however, when the prosecution alleges offenses in a manner not supported by the rule. Here, the challenge is that the People wrongly charged the offenses in identical language resulting in a multiplicitous information.

■ Multiplicity is the charging of the same offense in several counts, culminating in multiple punishments. *People v. Borghesi*, 66 P.3d 93, 98 (Colo.2003). We have recognized as the primary danger of a multiplicitous indictment, the risk that the defendant would be punished more than once for the same offense. *People v. Woellhaf*, No. 03SC664, 105 P.3d 209, 213, 2005 WL 89378

(Colo. January 18, 2005); *see also* 4 Wayne R. LaFave et. al., *Criminal Procedure* § 19.3(c), at 776 (2d ed. 1999 & Supp.2005). Thus, the multiplicitous bar is at the core of the prohibition against double jeopardy. *See North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); *Deutschendorf v. People*, 920 P.2d 53, 56 (Colo. 1996) (recognizing that the federal double jeopardy protection specifically includes guarantees that the accused will not be subject to multiple punishments imposed in the same criminal prosecution for statutory offenses proscribing the same conduct). We have made clear that both the state and Federal Constitutions prohibit double jeopardy. *See Borghesi*, 66 P.3d at 98; *People v. Leske*, 957 P.2d 1030, 1035 (Colo.1998).

■ In *Woellhaf*, No. 03SC664, 105 P.3d at 214, also decided today, we adopted our analysis in *People v. Williams*, 651 P.2d 899 (Colo.1982), for settling the issue of whether the defendant may be simultaneously prosecuted for distinct offenses under the same statute. Specifically, we held that where prosecution involves distinct offenses premised upon violation of the same statute, we adopted a two-tiered analysis: (1) whether the unit of prosecution prescribed by the legislature permits the charging of multiple offenses; and (2) whether the evidence in support of each offense justifies the charging of distinct offenses. *Id.* Hence, we proceed with that analysis here.

## 1. Legislative Direction: Unit of Prosecution

The People argue that each instance of sexual contact could constitute a separate violation of the statute, and that every distinguishable act of sexual contact constitutes an "allowable unit of prosecution." The defendant, on the other hand, argues that the entire incident constituted one offense. By those two theories, the defendant could be guilty of twenty five offenses or one offense, respectively.

■ In *Woellhaf*, No. 03SC664, 105 P.3d at 215, we determined that in proscribing the crime of sexual assault on a child, the general assembly did not authorize multiple punishments for each discrete act of touching. We derived that result by measuring the "unit of prosecution" allowed by the relevant statute, section 18–3–405. "Unit of prosecution" refers to the extent to which the relevant statute permits the prosecution to separate the defendant's conduct into discrete acts for purposes of prosecuting multiple offenses. *Id.* at 214. The statute's plain language determines its unit of prosecution. *Id.* at 215.

As delineated by the general assembly under section 18–3–405(1), sexual assault on a child is proscribed in the following manner:

> Any actor who knowingly subjects another not his or her spouse to any sexual contact commits sexual assault on a child if the victim is less than fifteen years of age and the actor is at least four years older than the victim.

■ "Sexual contact" is separately defined as:

> The knowing touching of the victim's intimate parts by the actor, or the actor's intimate parts by the victim, or the knowing touching of the clothing covering the immediate area of the victim's or actor's intimate parts if that sexual contact is for the purposes of sexual arousal, gratification or abuse.

§ 18–3–401(4). In *Woellhaf*, No. 03SC664, 105 P.3d at 215, we concluded, in substance, that in punishing the crime of sexual assault on a child, the legislature only authorized a single punishment for all discrete acts of touching that occur within a single incident of sexual assault on a child. We noted that the unit of prosecution for sexual assault on a child is "any sexual contact," observing that "any" modifies "sexual contact" to include "a multitude of types of sexual contacts." *Id.* Moreover, we rejected the argument that the use of the disjunctive "or" in the definition of "intimate parts" denotes the creation of a new offense for each act of knowing touching.[3] *Id.* at 216. Finding the identification of categories not to be dispositive, we analo-

---

**3.** "Intimate parts" means the external genitalia or the perineum or the anus or the buttocks or the pubes or the breast of any person. § 18–3–401(2).

gized to other statutes interpreting the use of the disjunctive "or" as merely specifying alternative means of committing the particular crime of sexual assault on a child. *Id.* at 217. Accordingly, we concluded that the plain language of the statute indicates that the act of sexual assault may be committed by several different means; in essence, each touching is not axiomatically a separate offense. Despite our conclusion to that effect, however, we made clear that the prosecution may assert multiple charges under the sexual assault on a child statute if the evidence adduced in support of each count justifies the charging of distinct offenses. *Id.* at 218–219.

## 2. Factually Distinct Acts

■ We turn to the analysis of various tests used to determine whether the defendant's conduct constituted factually distinct and separate acts. Courts commonly hold that incidents of sexual assault may be factually distinct if separate criminal acts have occurred at different times and were separated by intervening events. *See Gray v. United States,* 544 A.2d 1255, 1258 (D.C.1988); *see also Vaughan v. State,* 614 S.W.2d 718, 722 (Mo.Ct.App.1981) (emphasizing the facts of each case with particular reference to factors of time, place of commission and, "preeminently, defendant's intent, as evidenced by his conduct and utterances"). Some courts look to the presence of separate volitional acts as constituting basis for separate charges. *See, e.g., State v. Bergeron,* 162 Wis.2d 521, 470 N.W.2d 322, 327 (App. 1991). These courts find that even if the offense is not separate in time, it may comprise a separate offense if it constitutes "a new volitional departure in the defendant's course of conduct." *See State v. Anderson,* 219 Wis.2d 739, 580 N.W.2d 329, 334 (1998). Others explain the requirement by use of the "fork in the road test" under which the dispositive issue is "whether there was any evidence that [the defendant] reached a 'fork in the road, leading to a fresh impulse which resulted in a separate offense.'" *Sanchez–Rengifo v. United States,* 815 A.2d 351, 359 (D.C.2002) (explaining that the question is

whether the defendant had time to reflect before embarking on a "new outrage").

Other jurisdictions have adopted a non-exhaustive list of factors, including temporal proximity, location of the victim (movement or repositioning of the victim), existence of intervening event; sequencing (penetration through different orifices), defendant's intent as indicated by his conduct and utterances; and the number of victims. *See Herron v. State,* 111 N.M. 357, 805 P.2d 624, 628 (1991); *State v. Hamilton,* 791 S.W.2d 789, 795 (Mo. Ct.App.1990); *Lillard v. State,* 528 S.W.2d 207, 211 (Tenn.Crim.App.1975); *State v. Lomagro,* 113 Wis.2d 582, 335 N.W.2d 583, 592 n. 6 (1983); *Hamill v. State,* 602 P.2d 1212, 1216 (Wyo.1979); *see also State v. Johnson,* 53 S.W.3d 628, 633 (Tenn.2001) (listing similar factors).

However, the courts vary in the evidence considered sufficient to support each factor. As an example, in *Bergeron,* 470 N.W.2d at 327, the court upheld the defendant's conviction for five counts of sexual assault on the basis that the five charges covered a separate volitional act involving a new volitional departure in the defendant's course of conduct. The opinion was predicated on evidence that the defendant repositioned the victim several times, stopped to remove his pants after several acts and had two ejaculations. *Id.* Yet in *Gray,* a case involving longer intervals between the defendant's acts, the court found no significant break in the defendant's course of conduct to justify multiple punishments. There, the defendant had dragged the victim 40 to 45 feet off a path between acts and stopped for up to a minute when interrupted by passers-by. *Gray,* 544 A.2d at 1256.

■ In *Spain v. United States,* 665 A.2d 658, 661 (D.C.1995), the court affirmed the defendant's two convictions for sexually abusing a minor after he fondled her, stopped when she asked him not to continue, and then enticed her back for a second round of the "game." *Cf. Vaughan,* 614 S.W.2d at 722 (the court relied on evidence that there as a substantial time interval between the assaults (variously estimated to be 25 to 30 minutes, and 55 minutes), during which time the defendant sat on the bed and engaged

the victim in extended conversation); *Sanchez–Rengifo*, 815 A.2d at 359 (relying on evidence that defendant had over an extended period of time, committed different sex acts on the victim; and concluding that "there was time during the two hour period for the defendant to reflect as he ordered his victim into different positions"). Though the cases do not form a consensus on the length of time required between acts, all jurisdictions appear to require either that the defendant's acts of sexual perpetration not be so close in time, or be so lacking in intervals, that they constitute a single offense of sexual contact.

### 3. Application

■ Here, then, each act of touching cannot suffice as a separate offense. However, while we do not adopt any specific list of factors to determine whether the defendant's acts constitute factually distinct offenses, we look to all the evidence introduced at trial to determine whether the evidence on which the jury relied for conviction was sufficient to support distinct and separate offenses. *Cf. State v. Griffin*, 148 Ariz. 82, 713 P.2d 283, 287 (1986) (noting that when applying the "identical elements" test, the focus is on the evidence actually presented at trial, to establish that each punishment could have related to a different act). One fact is whether the People treated the defendant's acts as legally separable. *Gray*, 544 A.2d at 1259. At the preliminary hearing, the People established five distinct incidents of sexual contact on which they sought to rely for conviction.[4] At trial, the victim, her mother and the investigating officers testified to the sequence of events in the same manner—touching the victim's breast several times in the living room; relocating the victim outside the house

to the pool area and touching the victim's vaginal area; touching her buttocks in the bathroom; leaving and returning to the bathroom then touching her breasts; and biting her breasts in the living room.

■ The record evidences that the defendant had sufficient time to reflect after each encounter. He persisted after the victim admonished him to stop several times. Each incident occurred in a different location, or after the victim had left a location and returned there. As well, the record reflects sufficient breaks between each incident to allow the defendant time to reflect. Moreover, the defendant's statements supported the forming of renewed intentions. Though the record does not disclose specifically how long each incident lasted, the facts prove that the defendant's conduct was separate in temporal proximity and constituted a new volitional departure in his course of conduct. Accordingly, we conclude that the evidence supported five separate offenses and that the convictions are therefore not violative of double jeopardy.

### B. DUE PROCESS ANALYSIS

■ Whether the defendant is denied due process of law by the prosecution's failure to elect the particular act on which it relies for conviction is a question of law that we review de novo. *See State v. Rabago*, 103 Hawai'i 236, 81 P.3d 1151, 1160 (2003). This court adopted the election requirement in *Laycock v. People*, 66 Colo. 441, 444, 182 P. 880, 881 (1919), declaring that "where there is evidence of many acts, any one of which would constitute the offense charged, the People may be compelled to select the transaction on which they rely for a conviction."

---

4. At the preliminary hearing, the prosecutor explained the charging decision as follows:

I have not charged ten separate acts, where ten times he touches her breast. I have charged one sexual assault on a child for that incident where he is touching her breast over and over again. I have charged one incident where he is grabbing her legs, grabbing between her legs and her vaginal area *and* in having included that in the incident where he reaches up and touches her vagina .... Then there is the time

where he follows her into the bathroom, now in a different location, again grabs her breasts three to four more times. Again I have not charged that as three or four separate counts, I have charged that as one incident where he is not [sic] sexually assaulting her on the breast. I have then also charged as a separate incident where he then takes his hand and puts it on her buttocks and doesn't remove it for two to three minutes ... then he follows her to the living room and bites her on the left breast.

The election requirement protects the defendant's right to a unanimous verdict by assuring that some jurors do not convict on one offense and others on a separate offense; it also enables adequate defense preparation. *See Woertman v. People,* 804 P.2d 188, 191 (Colo.1991); *Kogan v. People,* 756 P.2d 945, 956 (Colo.1988). Generally, the prosecution need not make an election until at the close of its case. *See People v. Estorga,* 200 Colo. 78, 81, 612 P.2d 520, 523 (1980).

The purpose of the election requirement is twofold: (1) permitting the defendant meaningful opportunity for adequate defense preparation and (2) assuring jury unanimity. *See Woertman,* 804 P.2d at 191. Here, the analysis focuses on whether the defendant was deprived of the right to unanimous jury verdicts.[5]

■ Similar to other jurisdictions, *see, e.g., Johnson,* 53 S.W.3d at 629, we have applied the election rule to sexual assault cases. *See Woertman,* 804 P.2d at 191; *Thomas v. People,* 803 P.2d 144, 152 (Colo. 1990); *Kogan,* 756 P.2d at 952; *Estorga,* 200 Colo. at 81, 612 P.2d at 523. In *Estorga,* we held that when numerous acts of sexual assault are introduced to support a single count, the prosecution need not identify the exact date of the offense, but it "must individualize and select a specific act." 200 Colo. at 81, 612 P.2d at 523. We underscored the importance of a proper unanimity instruction in that context, and found unpersuasive the argument that "evidentiary difficulties involving children in sexual assault cases mandated a different constitutional standard for defendants accused of those crimes." *Id.*

■ Subsequently, however, we addressed the *Estorga* rule in the specific context of sexual assault committed over a lengthy period against very young children who are unable to identify the exact date on which the transaction occurred. *See Thom-*

*as,* 803 P.2d at 152. In that case, there were two victims and a series of acts. Emphasizing the difficulty courts face in applying the *Estorga* rule in that context, *id.* at 152, we adopted a standard permitting generalized allegations by the People, *id.* at 154–55. We directed that where the prosecution did not or could not elect a specific act, the court should give a modified jury unanimity instruction. We explained the rule as follows:

> [W]hen the evidence does not present a reasonable likelihood that jurors may disagree on which acts the defendant committed, the prosecution need not designate a particular instance. If the prosecutor decides not to designate a particular instance, the jurors should be instructed that in order to convict the defendant they must either unanimously agree that the defendant committed the same act or acts or that the defendant committed all of the acts described by the victim and included within the time period charged.

*Id.* at 153–54. In *Thomas,* the jury returned one guilty verdict as to each victim. *Id.* at 146.

■ In the case before the court today, the prosecution charged five counts of sexual assault premised on a series of sexual acts involving the same victim, the same general location and the same day. The information charged the defendant with identically worded sexual assault on a child counts, which tracked the language of the sexual assault on a child statute, section 18–3–405(1). None of the five counts described any identified acts as forming the basis for the charge.

The jury heard the victim's testimony narrating a series of incidents, and were never advised as to which incident corresponded to each charge.

The trial court denied the motion for bill of particulars, and the motion to compel election, but did give the modified *Thomas* jury

---

5. The court of appeals determined that based on information furnished through pretrial discovery, especially the affidavit, Quintano had been sufficiently appraised of the evidence against him to permit him to properly prepare his defense. Be-

cause we did not grant on the issue of whether the defendant was deprived of adequate defense preparation, we only state that the court of appeals opinion to that effect appears consistent with our decision in *Thomas,* 803 P.2d at 154.

instruction. The *Thomas* unanimity instruction, directed the jury that:

> In order to find the defendant guilty of sexual assault on a child, the jury must unanimously agree that the defendant committed the same act of sexual contact for each separate count, or that the defendant committed all of the acts of sexual contact.

The verdict forms tracked this standard unanimity instruction in two separate paragraphs, one directing that the jury must agree that the defendant committed "the same act," and the other directing that the jury must agree that the defendant committed "all of the acts." [6] The forms did not designate an option for the jury to specify on which acts the jury relied for a particular conviction. On the verdict forms the jury signed, for counts 1–3, the jury indicated that they found the defendant GUILTY of sexual assault on a child; they then marked the box showing that "We, the jury, unanimously find, beyond a reasonable doubt, that the defendant committed the same act of sexual contact with the victim described by the evidence on or about July 25, 1998." For the not guilty verdict forms on counts 4 and 5, the jury merely signed the NOT GUILTY line.

What we do know, therefore, is that the jury unanimously agreed that some act or series of acts comprised each count. What we do not know is which acts they associated with each count. The question is, thus, whether the defendant was deprived of a unanimous verdict by the prosecutor's failure to elect specific acts for each count.

Importantly, this is not a case in which the court neglected to issue a *Thomas* instruction to the jury. In essence, under *Thomas*, we must determine whether the unanimity instruction was sufficient to cure the harm resulting from the prosecution's failure to individualize the counts charged in the information.

Quintano wrongly asserts that the trial court instructed the jury that for each count, it had to agree unanimously that he "committed ONE of the acts, or ALL of the acts." Instead, the trial court affirmatively instructed the jury in Instruction 19 that they must "unanimously" agree that "the defendant committed the *same act* of sexual contact *for each separate* count." The verdict forms required the jury to elect either an interrogatory denoting that they agreed that Quintano committed "the same act" or "all of the acts." For the three verdicts of guilt, the jury chose the box indicating that they agreed that Quintano committed "the same act." Importantly, as well, they did not convict on Count 5—the only count associated with differing language on the verdict form, which related to physical injury (the breast biting incident).

We have consistently employed the presumption that the jury understands and applies the given instruction unless a contrary showing is made. *See People v. Shields,* 822 P.2d 15, 22 (Colo.1992); *Sanchez v. People,* 820 P.2d 1103, 1106 (Colo.1991); *People v. Moody,* 676 P.2d 691, 697 (Colo.1984). Even though the *possibility* exists that the jury may have convicted Quintano of more than one offense premised on the same act, we adopt the "less strained reading" that an ordinary reasonable jury would understand that when two or more counts charge the same crime, each count must be supported by a different act. *See State v. Ellis,* 71 Wash.App. 400, 859 P.2d 632, 635 (1993); *State v. Noel,* 51 Wash.App. 436, 753 P.2d 1017, 1018 (1988). There is no question but that the underlying evidence emphasized five discrete incidents of sexual contact by Quintano. M.H. testified that Quintano touched her breast several times in the living room; touched her crotch area near the pool; touched her breast in the bathroom; left and

---

6. Each Verdict form read:

* *☐ We, the jury, unanimously find, beyond a reasonable doubt, that the defendant committed *the same act* of sexual contact with the victim described by the evidence on or about July 25, 1998; OR

⁴ *☐ We, the jury, unanimously find, beyond a reasonable doubt, that the defendant committed *all of the acts* of sexual contact with the victim described by the evidence on or about July 25, 1998.

(emphasis added). For each conviction, the first bracket was marked with an X, representing the jury's choice.

returned to the bathroom where he touched her buttocks; and proceeded to the living room where he bit her breast.

As a whole, the record demonstrates that the jury understood their tasks and arrived at some means of demarcating the various incidents of sexual contact. *See Shields,* 822 P.2d at 22 (presuming the jury understood and followed the instruction because the evidence did not suggest that the jurors' confusion about the distinction between the crimes charge impaired their ability to assess the evidence in terms of the instruction given). Although the jury's task would have been made easier had the prosecution designated specific incidents for each count, the unanimity instruction averted the pitfall of more than one conviction for the same acts. The jury was told that they had to agree to the same act or acts as basis for each count of sexual assault on a child.

Consequently, we conclude that there was no due process violation arising out of the failure to elect specific acts for each count of the complaint and information.

## III. CONCLUSION

We affirm the court of appeals ruling that Quintano's convictions were not multiplicitous on the basis that the legislature has identified a unit of prosecution that would permit the jury to find five separate assaults, and the evidence at trial supports a conclusion that the defendant's course of conduct was separate in time and constituted five new volitional departures. Moreover, although we note that the failure of the People to elect specific acts on which it relied for each count created a situation in which it is impossible to determine from the verdict forms which evidence the jury relied upon for each count, the trial court did instruct the jury that they had to agree that the defendant committed the same acts as to each count. The record indicates that the jury executed its verdicts accordingly. As a result, we uphold the court of appeals' decision that there was also no due process violation. Therefore, we sustain Quintano's three convictions and sentences entered on jury verdicts convicting him of sexual assault on a child.