The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
May 2, 2019

## 2019COA64

## No. 18CA0407, *People v. Archuleta* — Criminal Law — Juries — Verdict — Jury Instructions — Modified Unanimity Instruction

A division of the court of appeals considers what kind of

verdict unanimity is required by section 16-10-108, C.R.S. 2018, in

a case where the prosecution charged the defendant with a single

count of child abuse. The prosecution invited the jury to find the

defendant guilty of the single count under any one of three

alternative theories of criminal liability, and two of those alternative

theories were supported by alternative discrete acts. The division

concludes that the jurors need not unanimously agree on the theory

of liability under which the defendant is guilty. But any jurors who

found the defendant guilty under the same non-continued pattern

of conduct theory must agree on the discrete act or acts that the

defendant committed.

The special concurrence addresses whether due process requires that verdicts are unanimous and concludes that it does not.

COLORADO COURT OF APPEALS                                    **2019COA64**

Court of Appeals No. 18CA0407
Weld County District Court No. 16CR1113
Honorable Julie C. Hoskins, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Sandra Archuleta,

Defendant-Appellant.

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division VII
Opinion by JUDGE MILLER*
Dunn, J., concurs
Ashby, J., specially concurs

Announced May 2, 2019

Philip J. Weiser, Attorney General, Jennifer L. Carty, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Joseph P. Hough, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2018.

¶ 1    Defendant, Sandra Archuleta, appeals the judgment of conviction entered on a jury verdict finding her guilty of child abuse resulting in death, a class 2 felony.  We reverse and remand for a new trial because we conclude that the trial court erred by failing to require the prosecution to elect the act or acts on which it relied for the child abuse conviction or to give the jury a modified unanimity instruction.

## I. Background

¶ 2    Archuleta took care of her four-month-old grandson for a week.  Several hours after the child's mother picked him up at the end of the week, she returned to Archuleta's house with the child.  Archuleta noticed that the child did not appear to be breathing, so she attempted CPR and called 911.  First responders arrived shortly thereafter and transported the child to the hospital.  He died early the following morning.  An autopsy revealed that the child had been suffering from dehydration and a bacterial infection that started as pneumonia and had spread to his blood.

¶ 3    The prosecution charged Archuleta with one count of child abuse resulting in death, alleging that she caused the child's death over the course of the week that she took care of him.  At trial, the

1

prosecution presented the following evidence. When the child's mother dropped him off at Archuleta's house at the beginning of the week, he was healthy. By the end of the week, the child had suffered numerous injuries, including chemical burns to his face, mouth, and knee; a torn frenulum (the flap of skin that connects the inner upper lip to the upper gum); broken ribs; and tweezer-induced pinch marks on various parts of his body.

¶ 4 The coroner who performed an autopsy on the day the child died testified that the cause of death was dehydration and the bacterial infection, and that the chemical burns, torn frenulum, and broken ribs all contributed to the child's death. According to the coroner, the chemical burns and torn frenulum made it difficult for the child to eat and caused the dehydration. And the broken ribs made it difficult for the child to cough and clear bacteria out of his lungs, resulting in pneumonia and the more widespread infection.

¶ 5 The coroner estimated that the chemical burns were likely forty-eight to seventy-two hours old at the time of the autopsy. He estimated that the broken ribs were approximately the same age and "certainly less than two weeks old." This testimony suggested that these injuries occurred while Archuleta was caring for the

child.  The coroner testified that he could not estimate when the torn frenulum occurred because once it tears, it typically does not heal.

¶ 6     At the close of evidence, defense counsel requested a unanimity instruction that would have required the jury to unanimously agree that Archuleta committed the same act or acts that constituted the offense of child abuse.  The trial court declined to give the instruction.  The only unanimity instruction the trial court gave the jury stated, "[y]our verdict must be unanimous."

¶ 7     The jury found Archuleta guilty of knowing or reckless child abuse resulting in death.  The trial court convicted her and sentenced her to twenty-four years in the custody of the Department of Corrections.

¶ 8     Archuleta appeals, arguing that the trial court erred by failing to give a modified unanimity instruction and denying her motion for a new trial in light of evidence that some jurors engaged in premature deliberations.  We agree that the trial court's failure to give a modified unanimity instruction requires reversal and therefore do not address Archuleta's premature deliberation argument, which is unlikely to arise again on remand.

## II. Lack of Modified Unanimity Instruction Requires Reversal

¶ 9    Archuleta argues that the trial court erred by failing to ensure that the jury's verdict was unanimous. She asserts that due process requires that verdicts are unanimous and that the court therefore violated her constitutional right to due process. We do not consider the constitutional due process issue and instead resolve this case under section 16-10-108, C.R.S. 2018, the Colorado statute requiring verdict unanimity.

### A. Due Process and Unanimity

¶ 10    Defendant briefly asserts in the opening brief that the question whether verdicts must be unanimous involves a constitutional due process right, and the People accept that assertion. We, however, "are not bound by the parties' concessions as to the applicable law." *People in Interest of J.C.*, 2018 COA 22, ¶ 37 n.5 (quoting *People v. Knott*, 83 P.3d 1147, 1148 (Colo. App. 2003)); *see also People v. Backus*, 952 P.2d 846, 850 (Colo. App. 1988). Regardless, our supreme court has explained that "the principle of judicial restraint requires us to 'avoid reaching constitutional questions in advance of the necessity of deciding them.'" *Dev. Pathways v. Ritter*, 178 P.3d 524, 535 (Colo. 2008) (quoting *Lyng v. Nw. Indian Cemetery*

4

*Protective Ass'n*, 485 U.S. 439, 445 (1988)); *see People v. Valdez*, 2017 COA 41, ¶ 6 ("[W]e address constitutional issues only if necessary."). Because the existence of a constitutional right of unanimity would not have any impact on our decision, we do not consider that issue.

¶ 11 In the present case, we can and do resolve the appeal by applying section 16-10-108, reversing the judgment, and remanding the case for retrial with directions.

### B. Statutory Unanimity Requirement

¶ 12 It is the trial court's statutory duty to properly instruct the jury to ensure that a conviction is the result of a unanimous verdict. *See People v. Childress*, 2012 COA 116, ¶ 28, *rev'd on other grounds*, 2015 CO 65M. But on what does section 16-10-108 require the jury to unanimously agree? The mere fact that the defendant is guilty or not guilty of the offense? The theory of criminal liability by which the defendant committed the offense? Or the specific act or acts that constituted the offense under a particular theory of criminal liability? Our supreme court has yet to squarely address this question.

¶ 13    In *People v. Taggart*, 621 P.2d 1375, 1387 (Colo. 1981),

*rejected on other grounds by James v. People*, 727 P.2d 850 (Colo.

1986), the court briefly addressed the defendant's argument that he

was denied his statutory right to a unanimous verdict.  The court

appeared to avoid the merits of this issue by holding that the

defendant failed to preserve it.  *Id.* ("The record indicates that the

defendant did not object to the elemental instruction on child

abuse, failed to request a special verdict, and did not assert his

present challenge to the general verdict in his motion for a new

trial.  Under such circumstances 'we are not inclined to hold that

the general instruction on the necessity of unanimity was

insufficient.'") (citation omitted).  Nevertheless, in a footnote, the

court observed that "[s]tate courts consistently have held that

unanimity is required only with respect to the ultimate issue of the

defendant's guilt or innocence of the crime charged and not with

respect to alternative means by which the crime was committed."

*Id.* at 1387 n.5.

¶ 14    Seven years later, the supreme court did not follow the

decisions from other jurisdictions cited in footnote 5 of *Taggart*

when it decided *Thomas v. People*, 803 P.2d 144 (Colo. 1990), and

required the court to instruct juries to reach unanimity on the acts committed by a defendant under certain circumstances. Specifically, the court held that when the prosecution presents evidence of multiple discrete acts, any one of which would constitute the charged offense, and there is a reasonable likelihood that jurors will disagree about which act the defendant committed, the trial court must do one of two things: (1) require the prosecution to elect the act or acts it relies on; or (2) instruct the jury that to convict it must unanimously agree that the defendant committed the same act or acts or all the alleged acts. *Id.* at 153-54.

¶ 15 The court did not cite section 16-10-108 in its opinion. But divisions of this court have consistently used the *Thomas* analysis when interpreting the unanimity statute. *See, e.g., People v. Wester-Gravelle*, 2018 COA 89M, ¶ 22; *People v. Vigil*, 2015 COA 88M, ¶ 41; *Childress*, ¶¶ 28-29; *People v. Devine*, 74 P.3d 440, 443 (Colo. App. 2003).

¶ 16 Importantly, the prosecution's presentation of evidence of multiple acts that might constitute the offense does not automatically require an election or a modified unanimity instruction. Even where the prosecution presents evidence of

7

alternative discrete acts to support a single offense, a modified unanimity instruction is unnecessary if the prosecution argues that the defendant committed the offense by engaging in a single criminal transaction encompassing all of the discrete acts. *See Vigil*, ¶ 42; *see also Melina v. People*, 161 P.3d 635, 641-42 (Colo. 2007).

¶ 17     A modified unanimity instruction is also unnecessary if, based on the evidence and theory of prosecution, there is no reasonable likelihood that some jurors will find the defendant guilty of a single offense based on different acts. *See Thomas*, 803 P.2d at 153-54.

¶ 18     In sum, divisions of this court have held that "[r]egardless of how the prosecution charges a defendant, either an election or a [modified] unanimity instruction is required when the evidence 'raises grave doubts whether the jurors' conviction was based upon a true unanimity, or whether different incidents formed the basis for the conclusion of individual jurors.'" *Wester-Gravelle*, ¶ 24 (quoting *Devine*, 74 P.3d at 443).

C. A Modified Unanimity Instruction was Required Here

¶ 19    The jury in this case found Archuleta guilty of one count of child abuse resulting in death.  A person commits child abuse if he or she

> causes an injury to a child's life or health, or permits a child to be unreasonably placed in a situation that poses a threat of injury to the child's life or health, or engages in a continued pattern of conduct that results in malnourishment, lack of proper medical care, cruel punishment, mistreatment, or an accumulation of injuries that ultimately results in the death of a child or serious bodily injury to a child.

§ 18-6-401(1)(a), C.R.S. 2018.  As we understand this statute, a person can commit child abuse under three alternative theories of criminal liability: (1) by causing an injury to the child's life or health; (2) by permitting a child to be unreasonably placed in a situation that poses a threat of injury to the child's life or health; or (3) by engaging in a continued pattern of conduct that results in the kind of mistreatment that ultimately results in death or serious bodily injury.

¶ 20    Another division of this court applied section 16-10-108's unanimity requirement to the offense of child abuse in *Childress*. In that case, the defendant was charged with and convicted of a

9

single count of child abuse. *Childress*, ¶ 1. The prosecution argued that the defendant committed child abuse under the single theory that he permitted the child to be placed in a situation that posed a threat of injury to the child's health. *Id.* at ¶ 36. Although the prosecution pursued only a single theory of criminal liability, it introduced evidence of multiple acts, each of which could have constituted the offense under that theory. *Id.* at ¶ 37. These acts included taking the child to a party where there was alcohol and drug use, giving the child alcohol, driving drunk with the child, and allowing the child to ride in a car while another unlicensed and intoxicated person drove. *Id.* The prosecution did not elect which act it was relying on to secure a conviction, and the jury was not instructed that it had to agree that the defendant committed the same act or all of the acts. *Id.* at ¶¶ 34-37. Instead, the prosecution invited the jury to convict the defendant based on any one of multiple acts. *Id.* at ¶ 40. Under these circumstances, the division held, the "trial court erred by not providing the jury with a modified unanimity instruction requiring it to agree on the act supporting the conviction or find that defendant had committed every alleged act of child abuse." *Id.* at ¶ 43.

10

¶ 21　　Like *Childress*, the prosecution here charged Archuleta with one count of child abuse resulting in death. But unlike *Childress*, the charge here included each of the three ways in which a defendant could commit the offense. And at trial, the prosecution argued to the jury that it could find Archuleta guilty based on any of these three alternative theories. Despite these differences, the same unanimity problem that occurred in *Childress* occurred here.

¶ 22　　Section 16-10-108 did not require the jurors to agree that Archuleta was guilty under the same theory. *See Vigil*, ¶ 40 (Jurors need not agree about the "theory by which a particular element is established."). But the prosecution presented evidence of multiple acts of child abuse, any one of which could have independently established Archuleta's guilt under the first or second theory (causing an injury to the child's life or health or permitting a child to be unreasonably placed in a situation that poses a threat of injury to the child's life or health). Therefore, any jurors who found her guilty under the first theory needed to agree on the specific acts she committed that constituted the offense under that theory. *See Childress*, ¶ 43. The same is true for any jurors who found her guilty under the second theory. We conclude that, based on the

prosecution's evidence and argument, it is reasonably likely that this required agreement did not exist. And because the prosecution did not elect which act or acts it was relying on to convict Archuleta under either of these two theories, a modified unanimity instruction was necessary. *Id.*

¶ 23 The prosecution presented evidence of three distinct injuries: chemical burns to the face and mouth, a torn frenulum, and broken ribs. The evidence suggested that the mechanism that caused each of these injuries was different. Therefore, each injury must have been committed by a distinct act. And, problematically for unanimity purposes, the prosecution argued during closing that any one or more of these injuries could have caused the child's death:

> [Archuleta] burns his skin and burns his mouth with chemicals, she tears his frenulum. Those injuries make it difficult for [the child] to eat. When he can't eat, he gets dehydrated. When he gets too dehydrated, he dies.
>
> She breaks his ribs. The rib injuries make it hard for [the child] to breathe, hard for him to cough. When he can't breathe and he can't cough, he's susceptible to pneumonia, which he gets and then he can't expel it. Pneumonia leads to infection, to sepsis, to death.

¶ 24　　Thus, under the first theory of liability, there is a reasonable likelihood that the jurors agreed that Archuleta caused an injury to the child's life or health but disagreed about the specific act or acts she committed that caused these injuries. We reach this conclusion because (1) different evidence supported the conclusion that she was responsible for each of these individual injuries and (2) there was evidence that some of the injuries could have occurred when the child was not in Archuleta's care.

¶ 25　　The coroner testified that the chemical burns likely occurred between forty-eight and seventy-two hours before the autopsy based on the presence of white blood cells at the sites of the burns and "other changes in the periphery of the lesion." And other evidence, including Archuleta's statement to a child welfare caseworker, indicated that Archuleta put potato slices soaked in what she claimed was vinegar on the child's face as a home remedy for fever.

¶ 26　　The coroner gave a less precise estimate of when the broken ribs occurred. He testified that the broken ribs may have been forty-eight to seventy-two hours old at the time of the autopsy but could have been up to two weeks old. This estimate was based on the inflammation around the injury and the absence of callouses.

Unlike the chemical burns, there was no direct evidence explaining how Archuleta broke the child's ribs.

¶ 27    As for the torn frenulum, the coroner was unable to estimate when that injury occurred, and there was no direct evidence that Archuleta caused it.

¶ 28    Based on this evidence, there was a reasonable likelihood that jurors could have disagreed about which injuries Archuleta caused. The evidence that Archuleta caused the chemical burns was strong. She admitted to putting vinegar-soaked potato slices on the child's face, and the coroner testified that the burns occurred during the week that Archuleta cared for the child.  In contrast, the evidence that Archuleta caused the broken ribs was less strong.  There was no direct evidence that she did anything that would have broken the child's ribs, and the coroner testified that the injury could have been up to two weeks old, leaving open the possibility that it could have occurred before Archuleta was caring for the child.  And the evidence that Archuleta caused the torn frenulum was even weaker. There was no direct evidence about when or how it occurred.

¶ 29    Thus, it was reasonably likely that jurors could have convicted Archuleta based on the theory that she caused an injury to the child but disagreed about which injury she caused.

¶ 30    The same unanimity problem existed based on the prosecution's argument and evidence that Archuleta committed child abuse by unreasonably placing the child in a situation that threatened his life or health.  The prosecution argued during closing that Archuleta's failure to seek medical attention after becoming aware of each of the separate injuries constituted separate acts of placing the child in a situation that threatened his life or health.  Jurors could have therefore determined that Archuleta was guilty of child abuse for having placed the child in a situation that threatened his life or health but disagreed about which instance of failing to seek medical attention constituted the offense.

¶ 31    Under these circumstances, section 16-10-108 required the trial court to give a modified unanimity instruction.  Such an instruction should read as follows:

> Your verdict must be unanimous that the prosecution has proven the charge of child abuse beyond a reasonable doubt.

Any jurors who find that the defendant is guilty beyond a reasonable doubt of child abuse because she caused an injury to the child's life or health must agree that the defendant committed the same act or acts, or that she committed all of the acts alleged.

Any jurors who find that the defendant is guilty beyond a reasonable doubt of child abuse because she permitted the child to be unreasonably placed in a situation that poses a threat of injury to the child's life or health must agree that the defendant committed the same act or acts, or that she committed all of the acts alleged.

However, any jurors who find the defendant guilty beyond a reasonable doubt of child abuse by engaging in a continued pattern of conduct that resulted in malnourishment, lack of proper medical care, cruel punishment, mistreatment, or an accumulation of injuries need not agree on the alleged acts that make up the continued pattern of conduct.

¶ 32    We recognize that the third theory the prosecution pursued at trial was that Archuleta engaged in a continued pattern of conduct that resulted in an accumulation of injuries leading to the child's death.  Had the prosecution pursued only this theory, a modified unanimity instruction may have been unnecessary.  *See People v. Harris*, 2015 COA 53, ¶ 39 ("[I]f all of the alleged criminal acts [of child abuse] occur in a single transaction, a unanimity instruction

16

may not be necessary."); *see also Melina,* 161 P.3d at 639-40. But that is not what the prosecution did. Instead, the prosecution encouraged the jury to find Archuleta guilty under any of the three theories of criminal liability in the child abuse statute. And the jury's verdict did not identify the theory that the jury relied on in finding Archuleta guilty. This, in and of itself, was not a unanimity problem (jurors need not agree on the theory of criminal liability). But any jurors who found Archuleta guilty under the first theory did need to agree on the specific act that established child abuse under that theory. The same is true for any jurors who found Archuleta guilty under the second theory. This was the unanimity problem that required either an election or the modified unanimity instruction articulated above.

## D. Error Requires Reversal

¶ 33     We further conclude that this error requires reversal because it was not harmless. The failure to give a modified unanimity instruction may be harmless if a reviewing court is convinced that the verdict was nevertheless unanimous. *See People v. Villarreal,* 131 P.3d 1119, 1128 (Colo. App. 2005). The People argue that the

jury's answers to three interrogatories established that the verdict was unanimous. We disagree.

¶ 34    It is true that the trial court could have given interrogatories that required the jury to agree on which act or acts Archuleta committed. This would have solved the unanimity problem described above. But the interrogatories the court gave here did no such thing.

¶ 35    The interrogatories given required the jury to unanimously agree on whether Archuleta's child abuse resulted in (1) death, (2) serious bodily injury, and (3) injury other than serious bodily injury. The jury unanimously agreed that Archuleta caused all three categories of injury. The People argue that the jury's answers to these interrogatories "support the inference that the jury believed unanimously that all the alleged acts occurred." But the prosecution argued repeatedly during closing argument that the interrogatories should play no role in the jury's determination of which acts of abuse occurred: "You've got your mental state and your action or inaction, that answers your question of whether she is guilty of child abuse, then ask yourself about the result." As recognized by the prosecution during closing argument, the jury's

18

unanimous determination that Archuleta's conduct resulted in death, serious bodily injury, and other injury does not mean that they agreed on the individual acts, separately or in combination, that caused the injuries or put the child in a situation that threatened his life or health.

¶ 36     This is especially true given that the prosecution argued throughout trial that different individual injuries and acts independently caused the same result. As discussed above, the prosecution argued that the chemical burns and torn frenulum caused the child's death by way of dehydration. But it also argued that the broken ribs caused the child's death by way of infection. Similarly, the prosecution argued that any of Archuleta's multiple failures to seek medical attention for the child placed him in a situation that threatened his life or health and caused his death. We therefore cannot conclude from the interrogatories that the jury agreed that Archuleta committed either all or the same combination of some of the alleged abusive acts.

¶ 37     The People also argue that the court's failure to give a modified unanimity instruction was harmless because there was sufficient

evidence to support Archuleta's conviction under all three theories of liability in the child abuse statute.  We disagree.

¶ 38	Courts in other jurisdictions have held that, under certain circumstances, a finding that the evidence was sufficient to sustain a conviction under every alternative theory of criminal liability will cure any uncertainty about unanimity in the verdict.  For example, in Washington,

> [w]hen there is more than one statutory alternative means of committing an offense, the . . . alternative means test generally requires that the jury unanimously agree on one of the alternative means.  But the [alternative means] test does not require reversal if the evidence of each alternative is sufficient to allow the trier of fact to have found each means beyond a reasonable doubt.

*In re Detention of Sease*, 201 P.3d 1078, 1083 (Wash. Ct. App. 2009) (applying a state constitutional right to unanimous verdicts stemming from the state constitutional right to a jury trial).

¶ 39	We decline to adopt Washington's alternative means test, for two reasons.  First, the Washington analysis addresses a lack of unanimity in alternative theories of criminal liability.  That is not the unanimity problem we have identified in this case.  The jurors were not required to agree that Archuleta committed child abuse

under the same *theory* of criminal liability. Instead, any jurors who found Archuleta guilty under either non-continued course of conduct theory ((1) caused an injury to the child's life or health, or (2) placed the child in an unreasonably dangerous situation) had to agree on the specific act or acts that established criminal liability under that particular theory.

¶ 40 Second, we are aware of no Colorado opinion holding that the jury's failure to agree on the specific act that established criminal liability under one of several alternative theories does not violate section 16-10-108 as long as there was sufficient evidence to support conviction under every alternative theory. And we would question the logic of such a holding.

¶ 41 Suppose that a defendant is convicted of a single count, under a single theory of liability, but the prosecution presents evidence of multiple acts that could constitute the offense under that theory. There is no election of a specific act, and there is no modified unanimity instruction. The jury returns a general verdict of guilty. On appeal, the appellate court determines that the evidence was sufficient to establish that the defendant committed each of the multiple acts that could have constituted the offense. This

21

sufficiency determination mitigates any concern that the defendant was convicted on something less than proof beyond a reasonable doubt (a due process violation).  But it does not ensure that the verdict was unanimous as section 16-10-108 requires.  Just because a reviewing court can say that a reasonable juror would have concluded that the defendant committed all the alternative acts does not mean that the actual jurors who deliberated agreed that the defendant committed all the alternative acts.  And section 16-10-108 requires that the actual jurors agree on the specific act or acts the defendant committed that resulted in criminal liability. *See Childress*, ¶ 43.

¶ 42     We therefore conclude that the trial court's failure to give a modified unanimity instruction was not harmless and requires reversal.  Based on this conclusion, we need not address Archuleta's additional argument on appeal.

¶ 43     In summary, we reverse the judgment and remand for a new trial.  If at the new trial the prosecution proceeds again under all three theories of liability under section 18-6-401(1)(a), or if it proceeds under only the first two theories or either of them, it must elect the transaction, act, or acts on which it relies for the non-

continued pattern of conduct theories. If the prosecution does not make such an election, and it presents evidence of multiple acts in support of either or both theories, then the court should instruct the jury as follows:

- If the prosecution proceeds under all three theories, then the court should give the jury the modified unanimity instruction set forth above.

- If the prosecution proceeds under the first two theories only (caused an injury to the child or permitted the child to be unreasonably placed in a situation that poses a threat of injury), the court should not include the fourth paragraph of the instruction set forth above.

- If the prosecution proceeds under only one of the first two theories, then the court should give only the standard modified unanimity instruction set forth in *Thomas*, 803 P.2d at 154 ("[T]he jurors should be instructed that in order to convict the defendant they must either unanimously agree that the defendant committed the same act or acts or that the defendant committed all of the acts" alleged.); *see also* CJI-Crim. E-11.

- If the prosecution proceeds under one of the first two theories plus the third theory (engaged in a continued pattern of conduct), then the court should give the *Thomas* modified unanimity instruction plus the fourth paragraph of the instruction set forth above.

If the prosecution proceeds under only the third theory, the court should not give a modified unanimity instruction.

## III. Conclusion

¶ 44    The judgment of conviction is reversed, and the case is remanded with directions for a new trial.

JUDGE DUNN concurs.

JUDGE ASHBY specially concurs.

JUDGE ASHBY, specially concurring.

¶ 45    I agree with the majority that we must reverse the judgment of conviction because the trial court violated Archuleta's statutory right to a unanimous verdict.  I write separately because I disagree with the majority that the due process issue is not properly before us and we should not address it.  I therefore address whether the right to due process includes the right to unanimous verdicts.

## I. We Should Address the Due Process Issue

¶ 46    The parties have argued that due process requires unanimous verdicts at both the trial and appellate level.  Archuleta frames her appellate argument as follows: "Ms. Archuleta's due process rights to a unanimous verdict were violated by the trial court's failure to instruct jurors that they must all agree on the acts she actually committed that caused the death of her grandson."  She cites to both the state and federal Due Process Clauses and also to cases that suggest that there is a due process right to unanimous verdicts.  The prosecution also identified the issue on appeal as whether Archuleta's due process right to a unanimous verdict was violated and argued that it was not.

25

¶ 47    Moreover, the trial court resolved the unanimity issue on due process grounds. The court relied on *People v. Dunaway*, 88 P.3d 619, 630 (Colo. 2004), in which the supreme court addressed whether the defendant's due process rights were violated by the prosecution submitting alternate theories of liability to the jury.

¶ 48    Because Archuleta, the prosecution, and the trial court all addressed the unanimity issue here as one involving Archuleta's right to due process, I conclude that whether a due process right to unanimous verdicts exists is properly before us and I address it below.

¶ 49    I also believe that the majority's reliance on due process cases in addressing Archuleta's statutory right to unanimity will lead to confusion and unnecessary litigation in this case and others. For example, the majority states that *People v. Thomas*, 803 P.2d 144 (Colo. 1990), "did not follow" the notion, articulated in *People v. Taggart*, 621 P.2d 1375 (Colo. 1981), that unanimity is required only on the ultimate issue of the defendant's guilt or innocence and not on the alternative means by which the crime was committed. But *Thomas* and *Taggart* addressed two different issues. *Taggart* addressed the statutory right to unanimity under section 16-10-

26

108. *Thomas* was a due process case that, as the majority recognizes, did not even cite to section 16-10-108.

¶ 50    The majority is correct that the language used in *Thomas* forms the basis for the analysis used by numerous divisions of this court when resolving statutory unanimity issues.  But it is precisely this reliance on *Thomas* that, in my view, requires us to address whether a due process right to unanimity exists before we dive into a full-throated discussion of statutory unanimity.

¶ 51    *Thomas*, like the numerous cases from other jurisdictions on which it relies, was a due process case.  The focus of most of the discussion was the defendant's right to fair procedures "that accord protection to the due process rights of the defendant." *Thomas*, 803 P.2d at 154.  It then discussed how, to protect a defendant's due process rights, a unanimity instruction is an alternative to prosecutorial election of acts when the evidence makes it difficult to distinguish discrete acts of abuse.  *Id.* at 153-54.  The court then held that the *constitutional* error in not requiring an election, in combination with the court's failure to give a unanimity instruction requiring the jurors to agree on the acts underlying each offense, was harmless beyond a reasonable doubt.  *Id.* at 154.

¶ 52    In section II.B., above, the majority cites to several opinions in which divisions of this court have "generally used the *Thomas* analysis when interpreting the unanimity statute." It is precisely this cross-application of law between cases resolving unanimity under the statute, the state and federal due process clauses or, at times neither (it is simply stated that unanimity is required), that has led us to where we are currently: a lack of clarity about whether due process requires unanimous verdicts.

¶ 53    For these reasons, I believe that Archuleta's due process argument is properly before us and we should fully address its merits. I do so now.

II. There is No Due Process Right to Unanimous Verdicts

¶ 54    Many courts, including our supreme court, have discussed what role modified unanimity instructions play in securing a defendant's constitutional rights. *See, e.g.*, *Quintano v. People*, 105 P.3d 585, 592-95 (Colo. 2005). These discussions may seem to suggest that a defendant has a constitutional right, emanating from the Due Process Clauses, to a unanimous verdict. But I discern no such right. Although due process requires that a conviction is

based on proof beyond a reasonable doubt, it does not require that a verdict is unanimous.

¶ 55 The United States Supreme Court has made clear that the federal right to due process does not include the right to unanimous verdicts. In *Johnson v. Louisiana*, 406 U.S. 356, 363 (1972), the Court upheld a defendant's conviction even though only nine out of the twelve jurors voted to convict. The Court explained that although due process requires that a conviction be based on proof beyond a reasonable doubt, "this Court has never held jury unanimity to be a requisite of due process of law." *Id.* at 359. The Court then went on to hold that the lack of jury unanimity did not establish that the defendant's conviction was based on something less than proof beyond a reasonable doubt. *Id.* at 363.

¶ 56 It is true that the Colorado Constitution's Due Process Clause may provide more extensive rights and protections than its federal counterpart. *See Dunaway*, 88 P.3d at 630. But I am unaware of any Colorado case holding that the state right to due process includes a right to a unanimous verdict. Instead, our supreme court has held that, under certain circumstances, a unanimity instruction can help ensure that a separate constitutional right is

vindicated, such as the right to be free from double jeopardy or the due process right to proof of guilt beyond a reasonable doubt.

¶ 57     *Quintano* is an example of such a case.  Therein, our supreme court addressed whether the defendant's right to due process was violated where he was convicted of several identical counts of sexual assault and the prosecution did not elect the particular act of sexual contact that supported each count.  *Quintano,* 105 P.3d at 592.  The court held that the defendant's right to due process was not violated because the jury received and followed a unanimity instruction.  *Id.* at 594.

¶ 58     At the beginning of its due process analysis, the supreme court used language suggesting that *there is* a state due process right to unanimous verdicts.  The supreme court described the issue before it as "[w]hether the defendant [wa]s denied due process of law by the prosecution's failure to elect the particular act on which it relie[d] for conviction."  *Id.* at 592.  It then explained that "[t]he election requirement protects the defendant's right to a unanimous verdict by assuring that some jurors do not convict on one offense and others on a separate offense; it also enables adequate defense preparation."  *Id.* at 593.

¶ 59    Based on this language, I understand why courts and parties, as they did here, might infer a state due process right to unanimous verdicts.  But the court ultimately held that verdict unanimity was not itself required by due process:

> Although the jury's task would have been made easier had the prosecution designated specific incidents for each count, *the unanimity instruction averted the pitfall of more than one conviction for the same acts.*  The jury was told that they had to agree to the same act or acts as basis for each count of sexual assault on a child.
>
> Consequently, we conclude that there was no due process violation arising out of the failure to elect specific acts for each count of the complaint and information.

*Id.* at 595 (emphasis added).

¶ 60    In my view, the *Quintano* court did not hold that the Due Process Clause or any other constitutional provision requires unanimous verdicts.  Instead, the court held that the unanimity instruction ensured that the defendant's right to be free from double jeopardy (not a due process right) was vindicated.  *Id.*

¶ 61    I find support for our reading of *Quintano* in Justice Coats' concurrence in *Melina v. People,* 161 P.3d 635, 642-48 (Colo.

31

2007).[1]  Justice Coats wrote that in *Quintano* and cases like it, the

supreme court held that a unanimity instruction can help protect a

defendant's right to due process.  But he made clear that due

process does not require jury unanimity:

> [W]e have found that a defendant's right to due
> process can be adequately protected, at least
> in these kinds of cases, despite less pre-trial
> detail, by insuring his ability to limit the scope
> of jury deliberations at a later stage.  Our
> heightened concern for the defendant's ability
> to adequately prepare a defense and for jury
> unanimity in the context of prosecutions in
> which he has been more than normally
> restricted from focusing the charge at the pre-
> trial stage was never intended to imply that
> criminal defendants in general have a right to
> jury agreement on a particular act.

*Id.* at 646 (Coats, J., concurring in the judgment only).

¶ 62     In short, I am unaware of any clear holding from our supreme

court that the state due process right requires unanimous verdicts

in criminal cases.  In the absence of such a holding, I must

conclude that such a right does not exist.  I therefore must reject

---

[1] Notably, the majority in *Melina* analyzed whether the defendant
was entitled to a unanimity instruction without citing due process
or section 16-10-108.  *See Melina v. People*, 161 P.3d 635, 636-42
(Colo. 2007).

Archuleta's argument that the lack of unanimity in the verdict, in and of itself, violated her right to due process.[2]

¶ 63     But this conclusion does not resolve Archuleta's contention that the court erred by not ensuring that the jury's verdict was unanimous.  Although there is no due process right to unanimous verdicts in Colorado, there is a statutory one.  Section 16-10-108, C.R.S. 2018, provides that "[t]he verdict of the jury shall be unanimous."  And even though Archuleta frames her unanimity argument as a violation of due process, the substance of her argument relies heavily on cases like *People v. Childress*, 2012 COA 116, *rev'd on other grounds*, 2015 CO 65M, applying the statutory

---

[2] Archuleta limits her constitutional argument to due process. Although she cites to the Sixth Amendment and article II, section 16 of the Colorado Constitution (guaranteeing the right to a jury trial), she does not argue that these provisions compel unanimous verdicts.  I therefore do not address whether the federal or state constitutional rights to a jury trial include the right to a unanimous verdict.

That said, I note that the Supreme Court has thus far declined to apply the Sixth Amendment's jury unanimity requirement in federal criminal trials to the states through the Fourteenth Amendment. *See Apodaca v. Oregon*, 406 U.S. 404, 406 (1972).  And I am unaware of any opinion from our supreme court holding that article II, section 16 of the Colorado Constitution requires unanimous verdicts in criminal cases.

unanimity requirement. I therefore agree with the majority that the issue of whether the trial court violated the statutory unanimity requirement is properly before us. And I agree with the majority's analysis and resolution of that issue.