Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us. Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
June 22, 2020

**2020 CO 64**

**No. 18SC624** *People v. Wester-Gravelle*—Plain Error—Juror Unanimity—
**Modified Unanimity Instructions—Election—Forgery.**

In this case involving one count of forgery against the defendant, the
supreme court must decide whether a division of the court of appeals erred in
concluding that the prosecution had an obligation to elect the specific document
or documents on which it would rely for conviction or, alternatively, that the
defendant was entitled to a modified unanimity instruction requiring the jurors to
agree unanimously that she had committed the same underlying act of forgery or
that she had committed all of the underlying acts.

In addressing this question, the court first concludes, contrary to the
People's assertion, that the defendant did not waive her assertion that either an
election or a modified unanimity instruction was required. Turning then to the
merits, the court further concludes that the trial court did not plainly err when it
did not, sua sponte, require an election or give a modified unanimity instruction
here because any error was neither obvious nor substantial.

Accordingly, the court reverses the judgment of the division below and remands this case to the court of appeals for consideration of the defendant's remaining contentions on appeal.

**2020 CO 64**

**Supreme Court Case No. 18SC624**
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 16CA1010

**Petitioner:**

The People of the State of Colorado,

v.

**Respondent:**

De Etta Wester-Gravelle.

**Judgment Reversed**
*en banc*
June 22, 2020

**Attorneys for Petitioner:**
Philip J. Weiser, Attorney General
Brock J. Swanson, Senior Assistant Attorney General
*Denver, Colorado*

**Attorneys for Respondent:**
Johnson & Klein, PLLC
Gail K. Johnson
*Boulder, Colorado*

**JUSTICE GABRIEL** delivered the Opinion of the Court.

¶1     This case is a companion case to *People v. Archuleta*, 2020 CO 63, __ P.3d __, which we are also deciding today.  Here, as in *Archuleta*, we consider the question of when a trial court must either require the prosecution to elect an act or acts on which it will rely for conviction or provide the jury with a so-called "modified unanimity instruction."  Specifically, in this case involving one count of forgery against the defendant, De Etta Wester-Gravelle, we must decide whether a division of the court of appeals erred in concluding that the prosecution had an obligation to elect the specific document or documents on which it would rely for conviction or, alternatively, that Wester-Gravelle was entitled to a modified unanimity instruction requiring the jurors to agree unanimously that she had committed the same underlying act of forgery or that she had committed all of the underlying acts.[1]

¶2     In addressing this question, we first conclude, contrary to the People's assertion, that Wester-Gravelle did not waive her assertion that either an election

---

[1] Specifically, we granted certiorari to review the following issues:

1. Whether a defendant waives any right to election or a special unanimity instruction by failing to make a timely request where evidence of multiple acts was introduced at trial.

2. Whether the trial court plainly erred in failing to give a special unanimity instruction where the evidence of multiple acts was introduced at trial.

or a modified unanimity instruction was required. Turning then to the merits, we further conclude that the trial court did not plainly err when it did not, sua sponte, require an election or give a modified unanimity instruction here because any error was neither obvious nor substantial.

¶3 Accordingly, we reverse the judgment of the division below, and we remand this case to the court of appeals for consideration of Wester-Gravelle's remaining contentions on appeal.

## I. Facts and Procedural History

¶4 Wester-Gravelle worked as a certified nursing assistant for a company called Interim Healthcare. During the time period in question, the company assigned her to care for a patient, W.M., who had suffered a stroke and needed assistance with tasks like bathing. W.M.'s partner, E.G., was also in poor health and could not perform such tasks for W.M.

¶5 Interim Healthcare assigned Wester-Gravelle to visit W.M. five times per week for two hours each day. At the conclusion of each shift, Wester-Gravelle was required to have either W.M. or E.G. sign Wester-Gravelle's shift chart to verify that she had been there. The charts would then serve as a record pursuant to which Interim Healthcare would pay Wester-Gravelle for her work.

¶6 Wester-Gravelle had been assigned to work with W.M. for several months when, in late July or early August of 2015, her supervisor, Lisa Conley, made a

3

routine visit to W.M.'s house during a time when Wester-Gravelle had been scheduled to be there. When Conley arrived, however, Wester-Gravelle was not there. Conley performed routine tasks of her own that day, and in the course of her conversation with W.M. and E.G., they said that they had not seen Wester-Gravelle in several weeks.

¶7 Interim Healthcare looked into this allegation, beginning by examining Wester-Gravelle's shift charts for various weeks in July 2015. Wester-Gravelle had submitted completed and signed charts for the weeks of July 11, 18, and 25 (on the shift charts, weeks began on Saturdays). In addition, payroll records indicated that Interim Healthcare had paid Wester-Gravelle for working five days during each of those weeks.

¶8 An employee from Interim Healthcare then contacted W.M. and asked him to examine the signatures on the shift charts at issue. W.M. said that the signatures on the charts for the three weeks in question were not his. E.G. also examined the signatures and stated that she felt that they were not W.M.'s, although she could not be certain. She further reiterated that Wester-Gravelle had not provided care to W.M. during those three weeks.

¶9 The case was subsequently referred to the Attorney General's office for the purpose of conducting a criminal investigation. In the course of this investigation, an investigator from that office obtained four signatures from W.M. for

4

comparison to those in the shift charts. An expert in questioned document examination analyzed the signatures and ultimately concluded that it was highly probable that W.M. did not author the signatures on the charts.

¶10 The prosecution thereafter charged Wester-Gravelle with one count of forgery, alleging that

> [b]etween and including July 11, 2015 and July 31, 2015, De [E]tta Wester-Gravelle with the intent to defraud Interim Healthcare, unlawfully, feloniously, and falsely made, completed, altered, or uttered a written instrument which was or which purported to be, or which was calculated to become or to represent if completed, . . . [an] instrument which document did or may have evidenced, created, transferred, terminated, or otherwise affected a legal right, interest, obligation, or status, namely: Home Care Aide Shift Charting Sheet; in violation of section 18-5-102(1)(c), C.R.S. [(2019)].

¶11 The case proceeded to trial, and at trial, the prosecution introduced as an exhibit a document containing an initial Home Care Aide Visit Sheet and three Home Care Aide Visit/Shift Charting Sheets covering the weeks of July 11, 18, and 25. Wester-Gravelle never asked that the court require the prosecution to elect the chart on which it would rely for conviction, nor did she request a modified unanimity instruction that would have required the jury to agree unanimously that Wester-Gravelle forged the same document or that she had forged all of the documents. The court, however, gave the jury the standard COLJI-Crim. E:23 (2019) instruction, which advised the jurors, "The verdict must represent the considered judgment of each juror, and it must be unanimous. In other words, all

5

of you must agree to all parts of it." The jury ultimately convicted Wester-Gravelle as charged, and the trial court sentenced her to two years of probation.

¶12 Wester-Gravelle appealed, arguing, as pertinent here, that the trial court plainly erred when it did not either require the prosecution to elect or give the jury a modified unanimity instruction. A divided division of the court of appeals reversed Wester-Gravelle's conviction and remanded the case for a new trial. *People v. Wester-Gravelle*, 2018 COA 89M, ¶ 1 __ P.3d __; *see also People v. Wester-Gravelle,* 2018 COA 89M, ¶ 63 (Bernard, C.J., dissenting).

¶13 The division's majority began by rejecting the People's argument that Wester-Gravelle had waived the claim that she was raising on appeal by failing to object to the information under Crim. P. 12(b)(2) and (3). *Id.* at ¶¶ 7–8. In the majority's view, Crim. P. 12(b) did not apply here. *Id.* The division thus proceeded to review Wester-Gravelle's assertion for plain error. *Id.* at ¶ 18.

¶14 In doing so, the majority noted that "when the complaint charges a single offense, the prosecution presents evidence of *multiple transactions* (any one of which would constitute the offense charged), and there is a reasonable likelihood that jurors may disagree about which transaction the defendant committed," then the trial court must either require the prosecution to elect the transaction or series of transactions on which it will rely to convict, or "it must instruct the jury that to convict, the jury must agree that the defendant committed the same act or all of

the acts included within the period charged." *Id.* at ¶ 22. Applying this principle, the majority concluded that "Wester-Gravelle committed the crime of forgery each time she completed, signed, and submitted a shift chart with the intent to be paid for a week of work she did not do." *Id.* at ¶ 34. Accordingly, the majority determined that her conduct comprised multiple transactions that required either a prosecutorial election or a modified unanimity instruction. *Id.* at ¶ 34. The majority further determined that the error in not requiring either an election or a modified unanimity instruction was both obvious and substantial and was so "seriously prejudicial" that it required that Wester-Gravelle receive a new trial. *Id.* at ¶¶ 44–49. In light of this disposition, the majority did not consider Wester-Gravelle's contention that the trial court had erred in entering a restitution order without a jury's factual findings. *Id.* at ¶ 61.

¶15 Chief Judge Bernard dissented. *Id.* at ¶ 63 (Bernard, C.J., dissenting). In his view, Wester-Gravelle waived her claim because she neither (1) filed a pretrial motion under Crim. P. 12(b)(2) asking the court to require a prosecutorial election or to give a modified unanimity instruction nor (2) raised the issue at trial. *Id.* at ¶ 66. Specifically, Chief Judge Bernard opined that the duplicity issue that Wester-Gravelle was raising was apparent on the face of the information, and even if it was not, the issue would have become clear once she received the prosecution's discovery or, at the latest, at trial. *Id.* at ¶¶ 72, 75–76. In Chief Judge

7

Bernard's view, Wester-Gravelle was required to raise the duplicity question at one of those points, and her failure to do so "denied the prosecution the opportunity to cure the defect and the court the opportunity to provide the jury with a unanimity instruction." *Id.* at ¶ 77. Accordingly, Chief Judge Bernard would have deemed Wester-Gravelle's duplicity claim waived and would not have considered it on the merits. *Id.* at ¶¶ 74, 77.

¶16 The People petitioned this court for certiorari review, and we granted their petition.

## II. Analysis

¶17 We begin by discussing the law pertinent to Crim. P. 12(b)(2) and waivers thereunder and conclude that Wester-Gravelle did not waive her unanimity claim. We thus proceed to review Wester-Gravelle's claim for plain error. In doing so, we decline to address the People's invitation to adopt the plain error standard articulated in *United States v. Olano*, 507 U.S. 725, 732 (1993), because the People did not raise that argument below and we did not grant certiorari to address it. We then turn to the merits of this case, and we conclude that Wester-Gravelle has not established reversible plain error on the facts presented here.

### A. Waiver and the Applicable Standard of Review

¶18 The People contend that Wester-Gravelle waived her present contention because (1) her argument is in the nature of a duplicity claim; (2) pursuant to

Crim. P. 12(b)(2) and (3), she was required to raise such a claim by motion within twenty-one days following arraignment or else the claim would be deemed waived, absent a showing of good cause; and (3) she did not timely raise the claim or show good cause.

¶19     Crim. P. 12(b)(2) provides, in pertinent part:

> Defenses and objections based on defects in the institution of the prosecution or in the indictment or information or complaint, or summons and complaint, other than that it fails to show jurisdiction in the court or to charge an offense, may be raised only by motion. The motion shall include all such defenses and objections then available to the defendant. Failure to present any such defense or objection constitutes a waiver of it, but the court for cause shown may grant relief from the waiver.

¶20     Crim. P. 12(b)(3), in turn, dictates, "The motion shall be made within 21 days following arraignment."

¶21     Under Crim. P. 8(a)(1), a defendant is entitled to have each offense alleged against him or her "prosecuted by separate counts in a single prosecution." *See also Sweek v. People*, 277 P. 1, 3 (Colo. 1929) ("No more than one offense should be charged in one count."). A count charging the commission of more than one distinct and separate criminal offense is duplicitous. *United States v. Miller*, 891 F.3d 1220, 1229 (10th Cir. 2018); *see also Melina v. People*, 161 P.3d 635, 644 (Colo. 2007) (Coats, J., concurring in the judgment only) ("Any count charging the commission of more than one offense is therefore subject to challenge as duplicitous."); *Marrs v. People*, 312 P.2d 505, 508 (Colo. 1957) ("To be duplicitous

9

an information must join two or more distinct and separate offenses in the same count of an indictment or information.").

¶22    Here, the People view Wester-Gravelle's unanimity contention as raising a duplicity issue, and they assert that such an issue is an inherent defect in a charging document, even when the issue is not apparent on the face of that document. The People thus contend that Wester-Gravelle was required to raise her present contention in a Crim. P. 12(b) motion and, having failed to do so, she waived that contention, even if the duplicity problem did not become apparent until the introduction of evidence during trial. For several reasons, we disagree.

¶23    First, the charge as filed by the prosecution in this case was not inherently duplicitous. The charge as written properly alleged a single count of forgery based on a Home Care Aide Shift Charting Sheet completed between and including July 11, 2015 and July 31, 2015. Nothing on the face of the charging document revealed a defect to which Wester-Gravelle could properly have objected.

¶24    Second, as we explained in *Reyna-Abarca v. People*, 2017 CO 15, ¶ 43, 390 P.3d 816, 823, "we perceive nothing in Crim. P. 12(b)(2) that requires a defendant to file a motion regarding any error that might later flow from the charging document . . . ." Nor have the People cited any area of law "in which parties are required to take action to preserve an issue before the issue has arisen and before

any error has occurred." *Id.* at ¶ 44, 390 P.3d at 823. Crim. P. 12(b)(2) simply does not require such prescience.

¶25    Third, to the extent that the People are arguing that Crim. P. 12(b)(2) sprang back into play after the pleading stage and in the course of discovery, they cite no applicable law to support such a theory, and the language of Crim. P. 12(b)(2) is to the contrary. Crim. P. 12(b)(2) is directed to defects in the information or complaint. As noted above, we perceive no such defect here, nor did the information become retroactively defective based on the evidence that the prosecution ultimately chose to present. Simply stated, at the time Wester-Gravelle allegedly knew or should have known, based on the discovery that she had received, that the evidence might present a unanimity issue, the issue was no longer a pleading matter governed by Crim. P. 12(b)(2). Rather, it was an issue regarding Wester-Gravelle's entitlement to a prosecutorial election or a modified unanimity instruction that could be raised at trial.

¶26    For all of these reasons, we conclude that Wester-Gravelle had no obligation to file a Crim. P. 12(b)(2) motion here, and therefore she did not waive her right to object on the basis of a lack of juror unanimity at trial.

¶27    This is not to say, however, that Wester-Gravelle preserved the issue now before us. She did not demand a prosecutorial election or request a modified unanimity instruction, and therefore she forfeited any such claim of error. *See*

11

*People v. Rediger*, 2018 CO 32, ¶ 44, 416 P.3d 893, 903 (concluding that a defendant's acquiescence to an alleged constructive amendment amounted to a forfeiture and not a waiver, when the defendant's lack of objection resulted from neglect and not intent). Accordingly, we will review her claim for plain error. *See id.* at ¶ 47, 416 P.3d at 903 (reviewing a forfeited argument for plain error).

¶28 As we have previously explained, "An error is plain if it is obvious and substantial and so undermines the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction." *Id.* at ¶ 48, 416 P.3d at 903. Generally, an error is obvious when it contravenes a clear statutory command, a well-settled legal principle, or Colorado case law. *Scott v. People*, 2017 CO 16, ¶ 16, 390 P.3d 832, 835.

¶29 We note that the People have asked that, if we review Wester-Gravelle's contention for plain error, we adopt the Supreme Court's articulation of the plain error standard in *Olano*, 507 U.S. at 732. The People, however, did not raise this issue before the division below. To the contrary, they relied on the same plain error standard that we apply here. Moreover, the People did not seek certiorari asking us to consider whether to adopt *Olano*'s plain error formulation, and we did not grant certiorari on that issue. Accordingly, the issue is not properly before us.

## B. Merits

¶30     Turning then to the merits of the issue before us, in *Archuleta*, ¶¶ 20–24, also decided today, we set forth the pertinent law regarding juror unanimity. As we explained at some length in that opinion, a Colorado criminal defendant is entitled to a unanimous jury verdict. *Id.* at ¶ 20. "Unanimity in a verdict is required, however, 'only with respect to the ultimate issue of the defendant's guilt or innocence of the crime charged and not with respect to alternative means by which the crime was committed.'" *Id.* (quoting *People v. Taggart*, 621 P.2d 1375, 1387 n.5 (Colo. 1981)). Thus, as we reiterated in *Archuleta*, "a jury need not unanimously decide 'which of several possible sets of underlying brute facts make up a particular element' or 'which of several possible means the defendant used to commit an element of the crime.'" *Id.* (quoting *Richardson v. United States*, 526 U.S. 813, 817 (1999)).

¶31     When, however, the prosecution presents evidence of multiple distinct acts, any one of which would establish the offense charged, "and there is a reasonable likelihood that jurors will disagree regarding which act was committed, then the People may be compelled to select the transaction on which they are relying for a conviction." *Id.* at ¶ 21. Alternatively, the defendant may be entitled to a modified unanimity instruction, informing the jurors that to convict the defendant, they "must either unanimously agree that the defendant committed the same act or acts

13

or that the defendant committed all of the acts described by the victim and included within the time period charged." *Id.* at ¶ 22 (quoting *Thomas v. People*, 803 P.2d 144, 154 (Colo. 1990)).

¶32 When a defendant is charged with engaging in a single transaction of criminal conduct and the prosecution proceeds at trial on that basis, however, neither a prosecutorial election nor a modified unanimity instruction is required. *Id.* at ¶ 23; *see also Melina*, 161 P.3d at 641–42 (considering a solicitation charge and concluding that no unanimity instruction was required when the prosecution did not present two discrete, mutually exclusive, and independent crimes of solicitation but rather the evidence and the prosecution's theory of the case were that the defendant had engaged in a single transaction of solicitation to murder another person).

¶33 The foregoing requirements serve "both to give the defendant a meaningful opportunity to prepare a defense and to assure juror unanimity." *Archuleta*, ¶ 24.

¶34 As pertinent here, the forgery statute provides:

> A person commits forgery, if, with intent to defraud, such person falsely makes, completes, alters, or utters a written instrument which is or purports to be, or which is calculated to become or to represent if completed:
>
> . . . .
>
> (c) a deed, will, codicil, contract, assignment, commercial instrument, promissory note, check, or other instrument which does

or may evidence, create, transfer, terminate, or otherwise affect a legal right, interest, obligation, or status.

§ 18-5-102(1)(c).

¶35 The parties agree that the prosecution charged Wester-Gravelle with a single count of forgery based on the alleged falsification of signatures on three shift charts. They disagree, however, as to whether such evidence represents multiple transactions or multiple incidents comprising a single transaction of forgery. Wester-Gravelle asserts that it was the former and that she was therefore entitled to either a prosecutorial election or a modified unanimity instruction. The People, in contrast, assert that it was the latter and that no such election or instruction was required. Even if the trial court erred, however, the People contend that any error was not plain. For several reasons, we agree with the People's latter contention and need not address the former.

¶36 First, in light of existing case law, we cannot say that any error was obvious. By way of example, in *Melina*, 161 P.3d at 641, we considered a scenario in which, like here, the prosecution charged several separate acts (there, solicitation to commit murder) as a single transaction. Notwithstanding the fact that the defendant had made numerous statements to several individuals expressing his desire to have the intended victim killed, we concluded that the defendant's statements, when taken together, constituted a single transaction of solicitation. *Id.* And because the evidence presented and the prosecution's theory of the case

were that the defendant had engaged in a single transaction of solicitation to commit murder, we determined that the trial court did not need to give the jurors a unanimity instruction. *Id.* at 641–42.

¶37 Because the circumstances in *Melina* parallel those at issue here (i.e., separate acts charged and tried as a single transaction), we cannot say that the trial court in this case contravened a well-settled legal principle or Colorado case law in not acting on its own to require an election or give a modified unanimity instruction. *See Scott*, ¶ 16, 390 P.3d at 835.

¶38 Second, as noted above, the trial court gave the jury the current version of the standard model criminal jury instruction regarding unanimity, which informed the jury that any verdict had to be unanimous as to "all parts of it." Because this instruction could be read to have required the jurors to reach unanimous agreement on every part of their verdict, we perceive no obvious error in the trial court's not, sua sponte, giving a modified unanimity instruction.

¶39 Finally, based on our review of the record, we cannot say that any error here was so substantial as to cast serious doubt on the reliability of the judgment of conviction. From the very beginning of this case, the prosecution treated Wester-Gravelle's conduct as a single transaction in which Wester-Gravelle forged her work record so that she would be paid for having worked three weeks in July of 2015, despite the fact that she had not worked any portion of that time. The

16

prosecution charged the case that way. The prosecution's witnesses then testified that Wester-Gravelle did not work any of the dates covered by the shift charts. An expert in questioned document examination testified that, in his opinion, it was highly probable that W.M. had not authored any of the signatures on the pertinent shift charts. The prosecution entered the three charts into evidence as a single exhibit. And during closing argument, the prosecution informed the jury that it had to find forged signatures on all three shift charts in order to convict Wester-Gravelle. Specifically, the prosecution told the jurors:

> [O]ne thing that may be creating some confusion is we've talked about a number of these signatures on the various forms. . . . I do not have to prove to you beyond a reasonable doubt that each and every one of those signatures was forged.
>
> Not every one of those signatures has to be forged, *but each of those forms has to contain a forged signature* in order to complete the three different time sheets from [the weeks ending] July 17th, from July 24th, from July 31st, which created the obligation for Interim Healthcare to pay the defendant for services she did not perform.

(Emphasis added.)

¶40 In light of the foregoing, we perceive no reasonable likelihood that the jurors would have disagreed about which of the charts Wester-Gravelle had falsified when they voted to convict her of the single count of forgery. The prosecution's evidence demonstrated that all three charts were forged. The prosecution argued to the jurors that to convict Wester-Gravelle, they had to find that each of the charts had a forged signature. And the prosecution did not suggest that the forged charts

17

reflected separate and distinct criminal transactions. Rather, consistent with the way in which it charged the case, it tried the case as involving a single transaction.

¶41 Accordingly, we conclude that any error in this case was not plain and Wester-Gravelle is not entitled to reversal of her conviction.

## III. Conclusion

¶42 For the reasons set forth above, we conclude that Wester-Gravelle did not waive her unanimity argument but merely forfeited it. Reviewing her contention, then, for plain error, we conclude that, in the circumstances presented, any error by the trial court in not requiring an election or giving a modified unanimity instruction was neither obvious nor substantial and therefore was not plain.

¶43 Accordingly, we reverse the division's judgment, and we remand this case for consideration of Wester-Gravelle's remaining contentions on appeal.