Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us.  Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
June 22, 2020
**AS MODIFIED July 27, 2020**

**2020 CO 63M**

**No. 19SC453,** *Archuleta v. People*—**Criminal Law**—**Juror Unanimity**—
**Modified Unanimity Instruction**—**Election**—**Child Abuse.**

In this case involving a charge of child abuse resulting in death, the supreme

court must determine whether the defendant was entitled to a modified unanimity

instruction requiring that the jurors either unanimously agree that she committed

the same act or acts underlying the child abuse charge or that she committed all of

those acts.  Because the prosecution charged and tried this case on the theory that

the defendant had committed the offense at issue by engaging in a single criminal

transaction resulting in the child's death, and because (in light of the prosecution's

theory) the supreme court sees no reasonable likelihood that the jurors disagreed

on which specific act caused the child's death, the court concludes that the

defendant was not entitled to a modified unanimity instruction here.

The court therefore reverses the judgment of the division below and remands this case to the court of appeals for consideration of the defendant's remaining contentions on appeal.

**2020 CO 63M**

**Supreme Court Case No. 19SC453**
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 18CA0407

**Petitioner:**

The People of the State of Colorado,

v.

**Respondent:**

Sandra Archuleta.

**Judgment Reversed**
*en banc*
June 22, 2020

**Opinion modified, and as modified, petition for rehearing DENIED. EN BANC.**

**July 27, 2020**

**Attorneys for Petitioner:**
Philip J. Weiser, Attorney General
Jennifer L. Carty, Assistant Attorney General
    *Denver, Colorado*

**Attorneys for Respondent:**
Megan A. Ring, Colorado State Public Defender
Joseph Paul Hough, Deputy State Public Defender
    *Denver, Colorado*

**JUSTICE GABRIEL** delivered the Opinion of the Court.

¶1     This case, along with *People v. Wester-Gravelle*, 2020 CO 64, __ P.3d __, which we are also deciding today, requires us to consider when a trial court must give the jury a so-called "modified unanimity instruction." Specifically, in this tragic case involving a charge of child abuse resulting in death, we must determine whether the defendant, Sandra Archuleta, was entitled to a modified unanimity instruction requiring that the jurors either unanimously agree that she committed the same act or acts underlying the child abuse charge or that she committed all of those acts.[1] Because the prosecution charged and tried this case on the theory that Archuleta had committed the offense at issue by engaging in a single criminal transaction resulting in the child's death, and because (in light of the prosecution's theory) we see no reasonable likelihood that the jurors disagreed on which specific act caused the child's death, we conclude that Archuleta was not entitled to a modified unanimity instruction here.

---

[1] Specifically, we granted certiorari to review the following issue:

> Whether the court of appeals erred in finding a modified unanimity instruction was required by statute in a child abuse resulting in death case where the offense is defined as a course of conduct, and it was charged and argued as a single transaction.

¶2      Accordingly, we reverse the judgment of the division below, and we remand this case to the court of appeals for consideration of Archuleta's remaining contentions on appeal. .

## I. Facts and Procedural History

¶3      Archuleta took care of her four-month-old grandson, D.A., for one week. Several hours after D.A.'s mother picked him up, she returned to Archuleta's home with D.A. Archuleta noticed that D.A. did not appear to be breathing, so she attempted CPR and called 911. First responders arrived shortly thereafter and transported D.A. to the hospital, but he died the following morning. An autopsy revealed that D.A. had been suffering from dehydration and a bacterial infection that had started as pneumonia and that had spread to his blood.

¶4      The prosecution subsequently charged Archuleta with one count of "child abuse resulting in death," alleging that she caused D.A.'s death over the course of the week in which she took care of him. Specifically, the Complaint and Information alleged:

> Between and including July 27, 2015 and August 2, 2015, Sandy Archuleta unlawfully, feloniously, knowingly, or recklessly caused an injury to, or permitted to be unreasonably placed in a situation that posed a threat of injury to, the life or health of a child, namely: [D.A.], or engaged in a continued pattern of conduct that resulted in malnourishment, lack of proper medical care, cruel punishment, mistreatment, or an accumulation of injuries, that resulted in the death of the child; in violation of section 18-6-401(1)(a), (7)(a)(I), C.R.S.

3

¶5     The case proceeded to trial, and at trial, the prosecution's evidence showed that when D.A.'s mother dropped him off at Archuleta's house at the beginning of the week, he was healthy. By the end of the week, however, D.A. was suffering from numerous injuries, including chemical burns on his forehead, nose, cheek, mouth, lips, ear, and knee, a torn frenulum (i.e., the flap of skin between the upper gum and lip), several broken ribs, and what appeared to be tweezer pinch marks all over his body. In addition, he was suffering from pneumonia, dehydration, and an infection in his bloodstream. The coroner who performed the autopsy on D.A. estimated that the chemical burns were approximately forty-eight to seventy-two hours old at the time of the autopsy and that the broken ribs were also forty-eight to seventy-two hours old "but certainly less than two weeks." The coroner could not estimate, however, when the torn frenulum occurred.

¶6     The coroner opined that each of D.A.'s injuries contributed to his death and that the ultimate cause of death was the combination of those injuries and the neglect in seeking help and getting enough food and liquid to him, which the coroner believed led to the infection and dehydration. Specifically, the coroner explained that the rib injuries limited D.A.'s ability to breathe and clear his lungs properly and that this assisted the pneumonia in "getting a better grip on him." In addition, the coroner believed that D.A.'s inability to breathe and the pain that he was experiencing probably limited his ability to nurse or use a bottle, resulting

4

in dehydration. And the coroner stated that the mouth and frenulum injuries further contributed to D.A.'s poor feeding and intake, which also contributed to his dehydration.

¶7 At the close of the evidence, Archuleta asked the court to order the prosecution to elect a theory of prosecution, given that the prosecution had charged multiple theories of child abuse. The court denied this request, however, apparently agreeing with the prosecution's assertion that it did not need to elect a theory as long as the court made clear to the jury that the prosecution was required to prove beyond a reasonable doubt each element of the offense, even if an element could have been established by alternative means.

¶8 Archuleta then requested that the court give the jury a so-called "modified unanimity instruction," and she tendered an instruction that would have required the jury to agree unanimously that she had committed the same act or acts that constituted the offense of child abuse. Archuleta's tendered instruction would further have advised the jurors that the prosecution had alleged multiple theories of prosecution and that, in order to convict, the jurors were required to agree on the theory of guilt. The court declined this request as well, relying on the same rationale that it had given for refusing to require the prosecution to elect a theory of prosecution. The court did, however, agree to provide the jury with interrogatories requiring the jurors to state whether they unanimously found

beyond a reasonable doubt that the child abuse resulted in (1) D.A.'s death, (2) serious bodily injury to D.A., or (3) non-serious bodily injury to him.

¶9     The parties proceeded to present their closing arguments, and, as pertinent here, the prosecutor addressed the fourth element in the elemental instruction for child abuse, which required the prosecution to prove that Archuleta

> caused an injury to a child's life or health, or permitted a child to be unreasonably placed in a situation that posed a threat of injury to the child's life or health, or engaged in a continued pattern of conduct that resulted in malnourishment, lack of proper medical care, cruel punishment, mistreatment or an accumulation of injuries.

¶10    The prosecutor told the jury that this element "has some options sort of within it, so it could be one of these, two of these, all three." The prosecutor immediately added, however, "[I]n this case really when you think about it she's done all three of these things." Consistent with this, the prosecutor ended his closing argument by reminding the jury that the coroner had testified that "the cause of death is injuries and neglect leading to infection and dehydration, and dehydration and pneumonia are the products of several different things. You can sort of just follow the chain of events from these injuries." The prosecutor thus argued that D.A.'s death "is a direct result of the injuries that [Archuleta] inflicted" and that the jurors

> can think of it a little bit like a road that [D.A.] followed over the course of that week, a road that ends at his death. Each of the injuries [Archuleta] inflicted upon [D.A.], each of the conditions he developed

6

are stops on that road. If you follow each of those backwards from his death, that road leads back to her, to her abuse and her neglect.

¶11 Notably, in defense counsel's closing, counsel did not dispute that the prosecution was proceeding on a theory that all of D.A.'s injuries combined to cause his death. To the contrary, counsel acknowledged that the prosecution's theory was that "all of these injuries happened and they resulted in death." Counsel argued, however, that the prosecution had not proved beyond a reasonable doubt that Archuleta had inflicted any life-threatening injuries on D.A., much less caused his death.

¶12 The jury found Archuleta guilty, unanimously determining in the interrogatories submitted to it that Archuleta's child abuse resulted in D.A.'s death, serious bodily injury, and non-serious bodily injury. The trial court subsequently sentenced Archuleta to twenty-four years in the Department of Corrections.

¶13 Archuleta then appealed, arguing, among other things, that the trial court had erred in denying her request for a modified unanimity instruction. In a published opinion, the division agreed with Archuleta, reversed her conviction, and remanded for a new trial. *People v. Archuleta*, 2019 COA 64, ¶¶ 43–44, __ P.3d __.

¶14 In so ruling, the division acknowledged that the prosecution had charged Archuleta with one count of child abuse resulting in death, but the division

7

observed that the charge included each of the three methods of committing child abuse set forth in the child abuse statute, section 18-6-401(1)(a), C.R.S. (2019). *Archuleta*, ¶¶ 12–21. Moreover, the division noted that the prosecution had argued to the jury that it could find Archuleta guilty based on any of these three theories. *Id.* at ¶ 21. And the division pointed out that the prosecution had presented evidence of multiple acts of child abuse, any one of which could have established that Archuleta (1) caused an injury to D.A.'s life or health or (2) permitted D.A. to be unreasonably placed in a situation that posed a threat of injury to his life or health. *Id.* at ¶ 22. In these circumstances, the division concluded that a modified unanimity instruction was necessary. *Id.*

¶15     In so holding, the division was unpersuaded by the fact that the prosecution had also alleged that Archuleta had engaged in a continued pattern of conduct that resulted in injuries that led to D.A.'s death. The division observed that had the prosecution pursued only this theory, a modified unanimity instruction might not have been required. *Id.* at ¶ 32. But in the division's view, the prosecution had not done so. *Id.* Accordingly, the division concluded that the trial court had erred in refusing to give the jury a modified unanimity instruction, and perceiving that this error was not harmless, the division reversed Archuleta's conviction and remanded the case for a new trial. *Id.* at ¶¶ 33–43.

¶16     The People then petitioned this court for certiorari review, and we granted that petition.

## II. Analysis

¶17     We begin by addressing the law pertinent to juror unanimity and the child abuse statute. We then apply the law to the facts before us and conclude that the division erred in concluding that a modified unanimity instruction was required on the facts of this case.

## A. Juror Unanimity

¶18     The People contend that the division erred in concluding that a modified unanimity instruction was required here, notwithstanding the fact that the offense of "child abuse resulting in death" is defined in part as encompassing a course of conduct and the crime here was charged and presented as a single transaction. In so arguing, the People ask us to adopt a four-part test that they propose, based on statements contained in case law from this court and from our court of appeals, and they further ask us to adopt what they characterize as a "continuous crime exception" to the juror unanimity requirement.

¶19     We decline the People's invitation to craft what we perceive to be extensive new law in this area. Nonetheless, applying longstanding principles of law relating to the requirement of juror unanimity, we ultimately agree with the

9

People that the division erred in concluding that a modified unanimity instruction was required on the facts of this case.

¶20 In Colorado, a criminal defendant is entitled to a unanimous jury verdict. § 16-10-108, C.R.S. (2019); Crim. P. 23(a)(8); Crim. P. 31(a)(3). Unanimity in a verdict is required, however, "only with respect to the ultimate issue of the defendant's guilt or innocence of the crime charged and not with respect to alternative means by which the crime was committed." *People v. Taggart*, 621 P.2d 1375, 1387 n.5 (Colo. 1981). Thus, as the Supreme Court has long established, a jury need not unanimously decide "which of several possible sets of underlying brute facts make up a particular element" or "which of several possible means the defendant used to commit an element of the crime." *Richardson v. United States*, 526 U.S. 813, 817 (1999); *see also United States v. Griggs*, 569 F.3d 341, 343 (7th Cir. 2009) ("The law distinguishes between the elements of a crime, as to which the jury must be unanimous, and the means by which the crime is committed."); *People v. Vigil*, 251 P.3d 442, 447 (Colo. App. 2010) ("Generally, jurors need not agree about the evidence or theory by which a particular element is established."); *People v. Linares-Guzman*, 195 P.3d 1130, 1134 (Colo. App. 2008) (noting that the requirement of juror unanimity means only that each juror must agree that every element of the crime charged has been proved beyond a reasonable doubt).

10

¶21 When, however, the prosecution presents evidence of multiple discrete acts, any one of which would constitute the offense charged, and there is a reasonable likelihood that jurors will disagree regarding which act was committed, then the People may be compelled to select the transaction on which they are relying for a conviction. *Quintano v. People*, 105 P.3d 585, 592–93 (Colo. 2005); *Thomas v. People*, 803 P.2d 144, 153–54 (Colo. 1990); *Laycock v. People*, 182 P. 880, 881 (Colo. 1919).

¶22 Alternatively, the defendant may be entitled to a special jury instruction, which has come to be called a "modified unanimity instruction," advising the jurors that in order to convict the defendant, they "must either unanimously agree that the defendant committed the same act or acts or that the defendant committed all of the acts described by the victim and included within the time period charged." *Thomas*, 803 P.2d at 153–54.

¶23 Neither a prosecutorial election nor a modified unanimity instruction is required, however, when a defendant is charged with engaging in a single transaction of criminal conduct and the prosecution proceeds at trial on that basis. *See Melina v. People*, 161 P.3d 635, 641–42 (Colo. 2007) (considering a solicitation charge and concluding that no unanimity instruction was required when the prosecution did not present two discrete, mutually exclusive, and independent crimes of solicitation but rather the evidence and the prosecution's theory of the case were that the defendant had engaged in a single transaction of solicitation to

11

murder another person); *see also Vigil*, 251 P.3d at 447 (noting that jurors need not agree about the evidence or theory by which a particular element is established, nor are they required to agree unanimously on the theory that supports a single conviction of theft).

¶24 The foregoing election requirement "protects the defendant's right to a unanimous verdict by assuring that some jurors do not convict on one offense and others on a separate offense; it also enables adequate defense preparation." *Quintano*, 105 P.3d at 593. The requirement thus serves both to give the defendant a meaningful opportunity to prepare a defense and to assure juror unanimity. *Id.*

¶25 Turning then to the child abuse statute, that statute provides, in pertinent part:

> A person commits child abuse if such person causes an injury to a child's life or health, or permits a child to be unreasonably placed in a situation that poses a threat of injury to the child's life or health, or engages in a continued pattern of conduct that results in malnourishment, lack of proper medical care, cruel punishment, mistreatment, or an accumulation of injuries that ultimately results in the death of a child or serious bodily injury to a child.

§ 18-6-401(1)(a).

¶26 Accordingly, under this statute, a person can commit child abuse in one of three ways: (1) the person "causes an injury to a child's life or health"; (2) the person "permits a child to be unreasonably placed in a situation that poses a threat of injury to the child's life or health"; or (3) the person "engages in a continued

12

pattern of conduct that results in malnourishment, lack of proper medical care, cruel punishment, mistreatment, or an accumulation of injuries that ultimately results in the death of a child or serious bodily injury to a child." *Id.* The first two of these methods of committing child abuse refer to specific acts of abuse. *See id.* The third, in contrast, refers to a pattern of conduct ultimately resulting in the child's death or in serious bodily injury to the child. *See id.*

¶27  In *Friend v. People*, 2018 CO 90, ¶ 19, 429 P.3d 1191, 1195, we concluded that "the child abuse statute prescribes a single crime of child abuse that can be committed in alternate ways," and not multiple distinct crimes of child abuse.

## B.  Application To The Facts Before Us

¶28  Consistent with the above-described principles, the prosecution charged Archuleta with a single count of "child abuse resulting in death." And although the prosecution noted for the jury that the crime of child abuse can be committed in three ways and that Archuleta's conduct here "could be one of these, two of these, all three," ultimately, the prosecution tried this case as involving a single pattern of conduct resulting in D.A.'s death. Thus, as noted above, the prosecution introduced testimony from the coroner that the cause of D.A.'s death was the combination of his injuries and neglect in seeking help and getting enough food and liquid to him, which resulted in a bacterial infection that had spread to his blood and dehydration. The prosecution further introduced evidence to show that

13

all of D.A.'s injuries, and in particular the chemical burns, torn frenulum, and broken ribs, contributed to his death. And in closing argument, the prosecution emphasized that Archuleta's conduct amounted to a chain of events that resulted in D.A.'s death.

¶29 The question before us thus becomes whether, in these circumstances, absent an election by the prosecution as to the particular method of abuse on which it was relying, Archuleta was entitled to a modified unanimity instruction. In addressing this question, we note, as a preliminary matter, that it is arguable that this case does not even implicate any issue regarding a prosecutorial election or the need for a modified unanimity instruction. As noted above, the child abuse statute creates one offense of child abuse, and it would have been perfectly appropriate for the jurors to rely on different evidence to establish the elements of that offense. *See Richardson*, 526 U.S. at 817; *Griggs*, 569 F.3d at 343; *Vigil*, 251 P.3d at 447; *Linares-Guzman*, 195 P.3d at 1134.

¶30 The People, however, do not appear to have made (or at least developed) such an argument. Nor need we decide this case on that basis because even if the principle that jurors may rely on different evidence to establish an element of an offense were inapplicable to the child abuse statute, we conclude that a modified unanimity instruction was not required on the facts before us.

14

¶31 As set forth above, the prosecution is not required to elect the method of committing the crime at issue, nor is a modified unanimity instruction mandated, when the prosecution charges a defendant with engaging in a single criminal transaction and then proceeds on that basis at trial. *See Melina*, 161 P.3d at 641–42. That is precisely what the prosecution did here. It charged one count of "child abuse resulting in death" based on a series of discrete acts, and the prosecution's evidence—and particularly the coroner's testimony—established that each of these discrete acts contributed to and together ultimately caused D.A.'s death.

¶32 In this regard, we view this case as factually similar to the circumstances that we considered in *Friend*, ¶¶ 5–8, 429 P.3d at 1193–94, also a child abuse case, although we acknowledge that the legal issues that we addressed there are different from those presented here. In *Friend*, the evidence established that the defendant had committed a number of acts of abuse against the child victim. *See id.* at ¶ 6, 429 P.3d at 1193. The prosecution, however, treated the defendant's abuse of the victim as one pattern of conduct resulting in the victim's death, rather than as multiple patterns and discrete offenses. *Id.* at ¶ 8, 429 P.3d at 1193. In light of the foregoing, we ultimately concluded that the prosecution did not prove that the defendant had committed separate crimes of child abuse but rather had proved only one count of child abuse resulting in death based on a pattern of conduct. *Id.* at ¶ 24, 429 P.3d at 1196. The same is true in this case.

15

¶33     Moreover, on the facts presented here, and given how the prosecution presented this case, we perceive no reasonable likelihood that the jurors would have disagreed on which act established the charged offense. Rather, notwithstanding isolated comments by the prosecution to the contrary, the record reflects that the prosecution tried this case as involving one pattern or transaction of abuse resulting in D.A.'s death. In addition, the interrogatories completed by the jury indicated that the jurors unanimously found that Archuleta had committed all of the underlying acts charged. And as noted above, in closing argument, Archuleta's counsel did not dispute that the prosecution had proceeded on a theory that all of D.A.'s injuries combined to cause his death but rather defended on the ground that the prosecution had failed to carry its burden of proving beyond a reasonable doubt that Archuleta had inflicted any of the injuries that ultimately resulted in D.A.'s death.

¶34     For these reasons, we conclude that Archuleta was not entitled to a modified unanimity instruction here. *See Melina*, 161 P.3d at 641–42 (noting that a unanimity instruction was not required when the prosecution's theory of the case was that the defendant had engaged in a single transaction of solicitation to commit the murder of another person and the prosecution's evidence supported that theory).

# III. Conclusion

¶35 Because the prosecution charged and presented this case on a theory that Archuleta had committed the offense at issue by engaging in a single criminal transaction resulting in D.A.'s death, and because (in light of the prosecution's theory) we see no reasonable likelihood that the jurors disagreed on which specific act caused D.A.'s death, we conclude that Archuleta was not entitled to a modified unanimity instruction on the facts of this case.

¶36 Accordingly, we reverse the judgment of the division below, and we remand this case for consideration of Archuleta's remaining contentions on appeal.

Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us. Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
June 22, 2020
**AS MODIFIED July 27, 2020**

**2020 CO 63M**

**No. 19SC453, *Archuleta v. People*—Criminal Law—Juror Unanimity—
Modified Unanimity Instruction—Election—Child Abuse.**

In this case involving a charge of child abuse resulting in death, the supreme

court must determine whether the defendant was entitled to a modified unanimity

instruction requiring that the jurors either unanimously agree that she committed

the same act or acts underlying the child abuse charge or that she committed all of

those acts. Because the prosecution charged and tried this case on the theory that

the defendant had committed the offense at issue by engaging in a single criminal

transaction resulting in the child's death, and because (in light of the prosecution's

theory) the supreme court sees no reasonable likelihood that the jurors disagreed

on which specific act caused the child's death, the court concludes that the

defendant was not entitled to a modified unanimity instruction here.

The court therefore reverses the judgment of the division below and

remands this case to the court of appeals for consideration of the defendant's

remaining contentions on appeal. ~~with instructions to reinstate the defendant's conviction on one count of child abuse resulting in death.~~

# The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

## 2020 CO 63M

### Supreme Court Case No. 19SC453
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 18CA0407

### Petitioner:

The People of the State of Colorado,

v.

### Respondent:

Sandra Archuleta.

### Judgment Reversed
*en banc*
June 22, 2020

### Modified Opinion.  Marked revisions shown.

**Attorneys for Petitioner:**
Philip J. Weiser, Attorney General
Jennifer L. Carty, Assistant Attorney General
*Denver, Colorado*

**Attorneys for Respondent:**
Megan A. Ring, Colorado State Public Defender
Joseph Paul Hough, Deputy State Public Defender
*Denver, Colorado*

**JUSTICE GABRIEL** delivered the Opinion of the Court.

¶1     This case, along with *People v. Wester-Gravelle*, 2020 CO 64, __ P.3d __, which we are also deciding today, requires us to consider when a trial court must give the jury a so-called "modified unanimity instruction." Specifically, in this tragic case involving a charge of child abuse resulting in death, we must determine whether the defendant, Sandra Archuleta, was entitled to a modified unanimity instruction requiring that the jurors either unanimously agree that she committed the same act or acts underlying the child abuse charge or that she committed all of those acts.[1] Because the prosecution charged and tried this case on the theory that Archuleta had committed the offense at issue by engaging in a single criminal transaction resulting in the child's death, and because (in light of the prosecution's theory) we see no reasonable likelihood that the jurors disagreed on which specific act caused the child's death, we conclude that Archuleta was not entitled to a modified unanimity instruction here.

¶2     Accordingly, we reverse the judgment of the division below, and we remand this case to the court of appeals for consideration of Archuleta's remaining

---

[1] Specifically, we granted certiorari to review the following issue:

Whether the court of appeals erred in finding a modified unanimity instruction was required by statute in a child abuse resulting in death case where the offense is defined as a course of conduct, and it was charged and argued as a single transaction.

2

contentions on appeal. ~~with instructions to reinstate Archuleta's conviction on one count of child abuse resulting in death~~.

## I. Facts and Procedural History

¶3 Archuleta took care of her four-month-old grandson, D.A., for one week. Several hours after D.A.'s mother picked him up, she returned to Archuleta's home with D.A. Archuleta noticed that D.A. did not appear to be breathing, so she attempted CPR and called 911. First responders arrived shortly thereafter and transported D.A. to the hospital, but he died the following morning. An autopsy revealed that D.A. had been suffering from dehydration and a bacterial infection that had started as pneumonia and that had spread to his blood.

¶4 The prosecution subsequently charged Archuleta with one count of "child abuse resulting in death," alleging that she caused D.A.'s death over the course of the week in which she took care of him. Specifically, the Complaint and Information alleged:

> Between and including July 27, 2015 and August 2, 2015, Sandy Archuleta unlawfully, feloniously, knowingly, or recklessly caused an injury to, or permitted to be unreasonably placed in a situation that posed a threat of injury to, the life or health of a child, namely: [D.A.], or engaged in a continued pattern of conduct that resulted in malnourishment, lack of proper medical care, cruel punishment, mistreatment, or an accumulation of injuries, that resulted in the death of the child; in violation of section 18-6-401(1)(a), (7)(a)(I), C.R.S.

¶5 The case proceeded to trial, and at trial, the prosecution's evidence showed that when D.A.'s mother dropped him off at Archuleta's house at the beginning of

3

the week, he was healthy. By the end of the week, however, D.A. was suffering from numerous injuries, including chemical burns on his forehead, nose, cheek, mouth, lips, ear, and knee, a torn frenulum (i.e., the flap of skin between the upper gum and lip), several broken ribs, and what appeared to be tweezer pinch marks all over his body. In addition, he was suffering from pneumonia, dehydration, and an infection in his bloodstream. The coroner who performed the autopsy on D.A. estimated that the chemical burns were approximately forty-eight to seventy-two hours old at the time of the autopsy and that the broken ribs were also forty-eight to seventy-two hours old "but certainly less than two weeks." The coroner could not estimate, however, when the torn frenulum occurred.

¶6 The coroner opined that each of D.A.'s injuries contributed to his death and that the ultimate cause of death was the combination of those injuries and the neglect in seeking help and getting enough food and liquid to him, which the coroner believed led to the infection and dehydration. Specifically, the coroner explained that the rib injuries limited D.A.'s ability to breathe and clear his lungs properly and that this assisted the pneumonia in "getting a better grip on him." In addition, the coroner believed that D.A.'s inability to breathe and the pain that he was experiencing probably limited his ability to nurse or use a bottle, resulting in dehydration. And the coroner stated that the mouth and frenulum injuries

4

further contributed to D.A.'s poor feeding and intake, which also contributed to his dehydration.

¶7    At the close of the evidence, Archuleta asked the court to order the prosecution to elect a theory of prosecution, given that the prosecution had charged multiple theories of child abuse. The court denied this request, however, apparently agreeing with the prosecution's assertion that it did not need to elect a theory as long as the court made clear to the jury that the prosecution was required to prove beyond a reasonable doubt each element of the offense, even if an element could have been established by alternative means.

¶8    Archuleta then requested that the court give the jury a so-called "modified unanimity instruction," and she tendered an instruction that would have required the jury to agree unanimously that she had committed the same act or acts that constituted the offense of child abuse. Archuleta's tendered instruction would further have advised the jurors that the prosecution had alleged multiple theories of prosecution and that, in order to convict, the jurors were required to agree on the theory of guilt. The court declined this request as well, relying on the same rationale that it had given for refusing to require the prosecution to elect a theory of prosecution. The court did, however, agree to provide the jury with interrogatories requiring the jurors to state whether they unanimously found

5

beyond a reasonable doubt that the child abuse resulted in (1) D.A.'s death, (2) serious bodily injury to D.A., or (3) non-serious bodily injury to him.

¶9 The parties proceeded to present their closing arguments, and, as pertinent here, the prosecutor addressed the fourth element in the elemental instruction for child abuse, which required the prosecution to prove that Archuleta

> caused an injury to a child's life or health, or permitted a child to be unreasonably placed in a situation that posed a threat of injury to the child's life or health, or engaged in a continued pattern of conduct that resulted in malnourishment, lack of proper medical care, cruel punishment, mistreatment or an accumulation of injuries.

¶10 The prosecutor told the jury that this element "has some options sort of within it, so it could be one of these, two of these, all three." The prosecutor immediately added, however, "[I]n this case really when you think about it she's done all three of these things." Consistent with this, the prosecutor ended his closing argument by reminding the jury that the coroner had testified that "the cause of death is injuries and neglect leading to infection and dehydration, and dehydration and pneumonia are the products of several different things. You can sort of just follow the chain of events from these injuries." The prosecutor thus argued that D.A.'s death "is a direct result of the injuries that [Archuleta] inflicted" and that the jurors

> can think of it a little bit like a road that [D.A.] followed over the course of that week, a road that ends at his death. Each of the injuries [Archuleta] inflicted upon [D.A.], each of the conditions he developed

6

are stops on that road. If you follow each of those backwards from his death, that road leads back to her, to her abuse and her neglect.

¶11 Notably, in defense counsel's closing, counsel did not dispute that the prosecution was proceeding on a theory that all of D.A.'s injuries combined to cause his death. To the contrary, counsel acknowledged that the prosecution's theory was that "all of these injuries happened and they resulted in death." Counsel argued, however, that the prosecution had not proved beyond a reasonable doubt that Archuleta had inflicted any life-threatening injuries on D.A., much less caused his death.

¶12 The jury found Archuleta guilty, unanimously determining in the interrogatories submitted to it that Archuleta's child abuse resulted in D.A.'s death, serious bodily injury, and non-serious bodily injury. The trial court subsequently sentenced Archuleta to twenty-four years in the Department of Corrections.

¶13 Archuleta then appealed, arguing, among other things, that the trial court had erred in denying her request for a modified unanimity instruction. In a published opinion, the division agreed with Archuleta, reversed her conviction, and remanded for a new trial. *People v. Archuleta*, 2019 COA 64, ¶¶ 43–44, __ P.3d __.

¶14 In so ruling, the division acknowledged that the prosecution had charged Archuleta with one count of child abuse resulting in death, but the division

observed that the charge included each of the three methods of committing child abuse set forth in the child abuse statute, section 18-6-401(1)(a), C.R.S. (2019). *Archuleta*, ¶¶ 12–21. Moreover, the division noted that the prosecution had argued to the jury that it could find Archuleta guilty based on any of these three theories. *Id.* at ¶ 21. And the division pointed out that the prosecution had presented evidence of multiple acts of child abuse, any one of which could have established that Archuleta (1) caused an injury to D.A.'s life or health or (2) permitted D.A. to be unreasonably placed in a situation that posed a threat of injury to his life or health. *Id.* at ¶ 22. In these circumstances, the division concluded that a modified unanimity instruction was necessary. *Id.*

¶15    In so holding, the division was unpersuaded by the fact that the prosecution had also alleged that Archuleta had engaged in a continued pattern of conduct that resulted in injuries that led to D.A.'s death. The division observed that had the prosecution pursued only this theory, a modified unanimity instruction might not have been required. *Id.* at ¶ 32. But in the division's view, the prosecution had not done so. *Id.* Accordingly, the division concluded that the trial court had erred in refusing to give the jury a modified unanimity instruction, and perceiving that this error was not harmless, the division reversed Archuleta's conviction and remanded the case for a new trial. *Id.* at ¶¶ 33–43.

8

¶16 The People then petitioned this court for certiorari review, and we granted that petition.

## II. Analysis

¶17 We begin by addressing the law pertinent to juror unanimity and the child abuse statute. We then apply the law to the facts before us and conclude that the division erred in concluding that a modified unanimity instruction was required on the facts of this case.

## A. Juror Unanimity

¶18 The People contend that the division erred in concluding that a modified unanimity instruction was required here, notwithstanding the fact that the offense of "child abuse resulting in death" is defined in part as encompassing a course of conduct and the crime here was charged and presented as a single transaction. In so arguing, the People ask us to adopt a four-part test that they propose, based on statements contained in case law from this court and from our court of appeals, and they further ask us to adopt what they characterize as a "continuous crime exception" to the juror unanimity requirement.

¶19 We decline the People's invitation to craft what we perceive to be extensive new law in this area. Nonetheless, applying longstanding principles of law relating to the requirement of juror unanimity, we ultimately agree with the

9

People that the division erred in concluding that a modified unanimity instruction was required on the facts of this case.

¶20 In Colorado, a criminal defendant is entitled to a unanimous jury verdict. § 16-10-108, C.R.S. (2019); Crim. P. 23(a)(8); Crim. P. 31(a)(3). Unanimity in a verdict is required, however, "only with respect to the ultimate issue of the defendant's guilt or innocence of the crime charged and not with respect to alternative means by which the crime was committed." *People v. Taggart*, 621 P.2d 1375, 1387 n.5 (Colo. 1981). Thus, as the Supreme Court has long established, a jury need not unanimously decide "which of several possible sets of underlying brute facts make up a particular element" or "which of several possible means the defendant used to commit an element of the crime." *Richardson v. United States*, 526 U.S. 813, 817 (1999); *see also United States v. Griggs*, 569 F.3d 341, 343 (7th Cir. 2009) ("The law distinguishes between the elements of a crime, as to which the jury must be unanimous, and the means by which the crime is committed."); *People v. Vigil*, 251 P.3d 442, 447 (Colo. App. 2010) ("Generally, jurors need not agree about the evidence or theory by which a particular element is established."); *People v. Linares-Guzman*, 195 P.3d 1130, 1134 (Colo. App. 2008) (noting that the requirement of juror unanimity means only that each juror must agree that every element of the crime charged has been proved beyond a reasonable doubt).

¶21    When, however, the prosecution presents evidence of multiple discrete acts, any one of which would constitute the offense charged, and there is a reasonable likelihood that jurors will disagree regarding which act was committed, then the People may be compelled to select the transaction on which they are relying for a conviction. *Quintano v. People*, 105 P.3d 585, 592–93 (Colo. 2005); *Thomas v. People*, 803 P.2d 144, 153–54 (Colo. 1990); *Laycock v. People*, 182 P. 880, 881 (Colo. 1919).

¶22    Alternatively, the defendant may be entitled to a special jury instruction, which has come to be called a "modified unanimity instruction," advising the jurors that in order to convict the defendant, they "must either unanimously agree that the defendant committed the same act or acts or that the defendant committed all of the acts described by the victim and included within the time period charged." *Thomas*, 803 P.2d at 153–54.

¶23    Neither a prosecutorial election nor a modified unanimity instruction is required, however, when a defendant is charged with engaging in a single transaction of criminal conduct and the prosecution proceeds at trial on that basis. *See Melina v. People*, 161 P.3d 635, 641–42 (Colo. 2007) (considering a solicitation charge and concluding that no unanimity instruction was required when the prosecution did not present two discrete, mutually exclusive, and independent crimes of solicitation but rather the evidence and the prosecution's theory of the case were that the defendant had engaged in a single transaction of solicitation to

11

murder another person); *see also Vigil*, 251 P.3d at 447 (noting that jurors need not agree about the evidence or theory by which a particular element is established, nor are they required to agree unanimously on the theory that supports a single conviction of theft).

¶24 The foregoing election requirement "protects the defendant's right to a unanimous verdict by assuring that some jurors do not convict on one offense and others on a separate offense; it also enables adequate defense preparation." *Quintano*, 105 P.3d at 593. The requirement thus serves both to give the defendant a meaningful opportunity to prepare a defense and to assure juror unanimity. *Id.*

¶25 Turning then to the child abuse statute, that statute provides, in pertinent part:

> A person commits child abuse if such person causes an injury to a child's life or health, or permits a child to be unreasonably placed in a situation that poses a threat of injury to the child's life or health, or engages in a continued pattern of conduct that results in malnourishment, lack of proper medical care, cruel punishment, mistreatment, or an accumulation of injuries that ultimately results in the death of a child or serious bodily injury to a child.

§ 18-6-401(1)(a).

¶26 Accordingly, under this statute, a person can commit child abuse in one of three ways: (1) the person "causes an injury to a child's life or health"; (2) the person "permits a child to be unreasonably placed in a situation that poses a threat of injury to the child's life or health"; or (3) the person "engages in a continued

12

pattern of conduct that results in malnourishment, lack of proper medical care, cruel punishment, mistreatment, or an accumulation of injuries that ultimately results in the death of a child or serious bodily injury to a child." *Id.* The first two of these methods of committing child abuse refer to specific acts of abuse. *See id.* The third, in contrast, refers to a pattern of conduct ultimately resulting in the child's death or in serious bodily injury to the child. *See id.*

¶27 In *Friend v. People*, 2018 CO 90, ¶ 19, 429 P.3d 1191, 1195, we concluded that "the child abuse statute prescribes a single crime of child abuse that can be committed in alternate ways," and not multiple distinct crimes of child abuse.

## B. Application To The Facts Before Us

¶28 Consistent with the above-described principles, the prosecution charged Archuleta with a single count of "child abuse resulting in death." And although the prosecution noted for the jury that the crime of child abuse can be committed in three ways and that Archuleta's conduct here "could be one of these, two of these, all three," ultimately, the prosecution tried this case as involving a single pattern of conduct resulting in D.A.'s death. Thus, as noted above, the prosecution introduced testimony from the coroner that the cause of D.A.'s death was the combination of his injuries and neglect in seeking help and getting enough food and liquid to him, which resulted in a bacterial infection that had spread to his blood and dehydration. The prosecution further introduced evidence to show that

13

all of D.A.'s injuries, and in particular the chemical burns, torn frenulum, and broken ribs, contributed to his death. And in closing argument, the prosecution emphasized that Archuleta's conduct amounted to a chain of events that resulted in D.A.'s death.

¶29 The question before us thus becomes whether, in these circumstances, absent an election by the prosecution as to the particular method of abuse on which it was relying, Archuleta was entitled to a modified unanimity instruction. In addressing this question, we note, as a preliminary matter, that it is arguable that this case does not even implicate any issue regarding a prosecutorial election or the need for a modified unanimity instruction. As noted above, the child abuse statute creates one offense of child abuse, and it would have been perfectly appropriate for the jurors to rely on different evidence to establish the elements of that offense. *See Richardson*, 526 U.S. at 817; *Griggs*, 569 F.3d at 343; *Vigil*, 251 P.3d at 447; *Linares-Guzman*, 195 P.3d at 1134.

¶30 The People, however, do not appear to have made (or at least developed) such an argument. Nor need we decide this case on that basis because even if the principle that jurors may rely on different evidence to establish an element of an offense were inapplicable to the child abuse statute, we conclude that a modified unanimity instruction was not required on the facts before us.

14

¶31 As set forth above, the prosecution is not required to elect the method of committing the crime at issue, nor is a modified unanimity instruction mandated, when the prosecution charges a defendant with engaging in a single criminal transaction and then proceeds on that basis at trial. *See Melina*, 161 P.3d at 641–42. That is precisely what the prosecution did here. It charged one count of "child abuse resulting in death" based on a series of discrete acts, and the prosecution's evidence—and particularly the coroner's testimony—established that each of these discrete acts contributed to and together ultimately caused D.A.'s death.

¶32 In this regard, we view this case as factually similar to the circumstances that we considered in *Friend*, ¶¶ 5–8, 429 P.3d at 1193–94, also a child abuse case, although we acknowledge that the legal issues that we addressed there are different from those presented here. In *Friend*, the evidence established that the defendant had committed a number of acts of abuse against the child victim. *See id.* at ¶ 6, 429 P.3d at 1193. The prosecution, however, treated the defendant's abuse of the victim as one pattern of conduct resulting in the victim's death, rather than as multiple patterns and discrete offenses. *Id.* at ¶ 8, 429 P.3d at 1193. In light of the foregoing, we ultimately concluded that the prosecution did not prove that the defendant had committed separate crimes of child abuse but rather had proved only one count of child abuse resulting in death based on a pattern of conduct. *Id.* at ¶ 24, 429 P.3d at 1196. The same is true in this case.

¶33 Moreover, on the facts presented here, and given how the prosecution presented this case, we perceive no reasonable likelihood that the jurors would have disagreed on which act established the charged offense. Rather, notwithstanding isolated comments by the prosecution to the contrary, the record reflects that the prosecution tried this case as involving one pattern or transaction of abuse resulting in D.A.'s death. In addition, the interrogatories completed by the jury indicated that the jurors unanimously found that Archuleta had committed all of the underlying acts charged. And as noted above, in closing argument, Archuleta's counsel did not dispute that the prosecution had proceeded on a theory that all of D.A.'s injuries combined to cause his death but rather defended on the ground that the prosecution had failed to carry its burden of proving beyond a reasonable doubt that Archuleta had inflicted any of the injuries that ultimately resulted in D.A.'s death.

¶34 For these reasons, we conclude that Archuleta was not entitled to a modified unanimity instruction here. *See Melina*, 161 P.3d at 641–42 (noting that a unanimity instruction was not required when the prosecution's theory of the case was that the defendant had engaged in a single transaction of solicitation to commit the murder of another person and the prosecution's evidence supported that theory).

## III. Conclusion

¶35     Because the prosecution charged and presented this case on a theory that Archuleta had committed the offense at issue by engaging in a single criminal transaction resulting in D.A.'s death, and because (in light of the prosecution's theory) we see no reasonable likelihood that the jurors disagreed on which specific act caused D.A.'s death, we conclude that Archuleta was not entitled to a modified unanimity instruction on the facts of this case.

¶36     Accordingly, we reverse the judgment of the division below, and we remand this case for consideration of Archuleta's remaining contentions on appeal~~with instructions to reinstate Archuleta's conviction on one count of child abuse resulting in death~~.

17